**Matthew Thomas CLARKE, Appellant,**

v.

**STATE of Texas, State.**

**No. 2–88–101–CR.**

Court of Appeals of Texas, Fort Worth.

Jan. 31, 1990.

Rehearing Denied March 27, 1990.

John D. Nation and Douglas D. Mulder, Dallas, for appellant.

Jerry Cobb, Crim. Dist. Atty., Lee Gabriel, and Gwinda Burns, Asst. Crim. Dist. Attys., for appellee.

Before JOE SPURLOCK, II, KELTNER and MEYERS, JJ.

## OPINION

MEYERS, Justice.

This is an appeal from a conviction for the offense of aggravated sexual assault. Appellant, Matthew Thomas Clarke, was sentenced by a jury to ninety-nine years in the Texas Department of Corrections. Appellant appeals on twelve points of error. We reverse the judgment and remand to the trial court for a new trial on punishment only in accordance with TEX.CODE CRIM.PROC.ANN. art. 44.29(b) (Vernon Supp.1990).

The complainant in this case was awakened in her home in Denton, Texas around midnight when she felt a knife being held at her throat. The head of her assailant was mostly covered, but she could see his eyes. The assailant tied her hands behind her back and attached a blindfold. He removed her clothes and forced her to have intercourse with him. Her assailant, however, could not maintain an erection and demanded oral sex from the complainant.

The blindfold was later removed and replaced with duct tape. After forcing her to have intercourse with him again, the assailant led complainant to her dresser, put her up on it and had further sexual intercourse. The assailant then led her to the bathroom, where he washed her vaginal area. Finally, the assailant retaped her hands and feet and warned her not to call the police. He then covered her with a sheet and left.

Clarke was indicted for the sole offense of aggravated sexual assault. During the trial, testimony was heard from two witnesses as to extraneous offenses wherein each witness had also been sexually assaulted. One witness identified Clarke as

being her attacker. The second witness did not positively identify appellant but a fingerprint taken from duct tape placed around her head matched Clarke's left index finger. Appellant had been indicted for the extraneous offenses introduced at trial but had not been tried for the crimes.

In his first four points of error Clarke asserts the trial court erred as follows: admitting evidence of two extraneous offenses because they did not have sufficient similarities to the charged offense, one was only shown to be committed by appellant by circumstantial evidence and, in addition, was too remote in time for the probative value of such offense to outweigh its prejudicial effect.

The facts as they relate to the extraneous offense of C.V., Clarke's first and second points of error, are as follows. During trial C.V. testified to an extraneous offense where she was sexually assaulted eleven months prior to the charged offense. C.V. had been working on a dance project in the Margo Jones Theater located in the Music Building at Texas Women's University in Denton. At approximately 9:20 p.m. an assailant came out of an alcove brandishing a knife. The assailant wore a navy blue jogging suit and dark colored pants. The suit had a hood which the assailant utilized as well as a white mask covering a portion of his face. C.V. was unable to identify her assailant.

C.V. was cut in the hand while attempting to grab the assailant's hand holding the knife. The assailant took her to another room, asked her to remove her clothes, covered her eyes with duct tape and then taped her hands behind her back.

The assailant next forced her to perform oral sex and sexual intercourse. Before leaving, the assailant wound duct tape around C.V.'s head and ankles. C.V. also testified her assailant had a childish physique and a soft body. A fingerprint found on the duct tape taken from C.V.'s hair was identified as belonging to Clarke.

The jury could have concluded beyond a reasonable doubt that the fingerprint taken from C.V.'s hair was not the first piece of tape the attacker used because he wound it around her head after he had already taped her eyes and hands. Therefore, it could not have been left on the roll of tape by appellant from a prior occasion.

Furthermore, Jonathon Roller, conductor of the community orchestra, testified that Clarke played the trombone in the orchestra and attended practice in the Music Building at 7:00 p.m. on April 8, 1986. The practice for Clarke's section concluded about 8:15, but Clarke might have stayed until nearly 9:20 when Roller left. The practice was on the third floor of the building; the Margo Jones Theater was on the first floor. In order to leave the building, it was necessary to pass the entrance to the theater.

Clarke is shown to be on the premises at about the time of the attack. Considering this fact along with the fingerprint evidence, the jury could conclude beyond a reasonable doubt that Clarke committed the crime.

■ It is a fundamental principle of law that an accused is entitled to be tried on the accusation made in the State's pleading and not for some collateral crime or for being a criminal generally. *Smith v. State*, 646 S.W.2d 452, 455 (Tex.Crim.App. 1983). Therefore, the State is generally prohibited from proving prior specific acts of misconduct, similar happenings, or extraneous offenses committed by the accused. *Elkins v. State*, 647 S.W.2d 663, 665 (Tex.Crim.App.1983). The reason for this rule is that although the evidence has some legal relevance to the general issue of whether the accused committed the act charged, it is inadmissible because it is inherently prejudicial, tends to confuse the issues in the case, and forces the accused to defend himself against charges which he had not been notified would be brought against him. *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Crim.App.1972). *See also Williams v. State*, 662 S.W.2d 344, 346 (Tex.Crim.App.1983).

This evidence may, however, under some circumstances, become admissible; the

State may introduce evidence of an accused's extraneous misconduct upon a showing both that the evidence is relevant to a material issue in the case and that the probative value of the evidence outweighs its inflammatory or prejudicial potential. *Morgan v. State,* 692 S.W.2d 877, 879 (Tex. Crim.App.1985). The requirement that the material issue be contested as a prerequisite to admission of extraneous acts in proof thereof, is no more than a rule of thumb for insuring that an extraneous act is genuinely needed to shore up the State's case. *Boutwell v. State,* 719 S.W.2d 164, 172 (Tex.Crim.App.1985) (opinion on reh'g). It is really, therefore, an aspect of the "more probative than prejudicial" analysis, since the greater the State's need to resort to extraneous offenses to prove up some material issue in the case, the higher will be the probative value of that offense in relation to its potential for prejudice. *See id.*

Evidence of an appellant's extraneous offense may be admissible if its probative value outweighs its prejudicial potential, to prove the following: context in which the act occurred ("res gestae") *see Durant v. State,* 688 S.W.2d 265, 267 (Tex.App.—Fort Worth 1985, pet. ref'd; identity of the perpetrator; intent or knowledge; malice or state of mind; motive, scheme or plan; or to refute a defensive theory. *Albrecht,* 486 S.W.2d at 100–01. The *Albrecht* list is not a rule of absolute admissibility, but merely a list of examples. *Morgan,* 692 S.W.2d at 879; *Williams,* 662 S.W.2d at 345–46.

Appellant relies upon *Williams,* and *Castillo v. State,* 739 S.W.2d 280 (Tex.Crim. App.1987) (en banc), *cert. denied,* 487 U.S. 1228, 108 S.Ct. 2889, 101 L.Ed.2d 924 (1988). In both of these cases, however, the State was allowed to introduce extraneous offenses to prove identity.[1]

The nature of Clarke's argument is similar to the *Williams* argument: that the evidence offered does not fit neatly into one of the "exceptions" to the general rule prohibiting admission of the extraneous offenses listed in *Albrecht.* Specifically, appellant presented the following argument in his brief:

> [T]he State's evidence as to the identity of [complainant's] assailant was circumstantial. Therefore, the State apparently sought to introduce the extraneous offense involving [C.V.] for the jury's consideration on this issue.

A more narrow and serious question is presented by this Point of Error: if the evidence of identity on the charged offense is entirely circumstantial, then is an extraneous offense for which the evidence of identity is entirely circumstantial relevant? If so, is such an offense relevant so as to outweigh the significant prejudicial effect of such an offense?

It has also been said that an extraneous offense is admissible on the question of identity if the extraneous offense has sufficient common distinguishing characteristics to show it was the handiwork of the accused, "and the State's case is entirely circumstantial on the question of identity." *Russell v. State,* 665 S.W.2d 771, 778 (Tex. Crim.App.1983) (en banc), *cert. denied,* 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752 *reh'g denied,* 466 U.S. 932, 104 S.Ct. 1720, 80 L.Ed.2d 192 (1984); *see also Siqueiros v. State,* 685 S.W.2d 68, 71 (Tex.Crim.App. 1985) (en banc). Before an extraneous offense may be admitted against an accused it must be shown that there is a relationship between such evidence and the evidence necessary to prove the accused committed the crime for which he stands charged. *Id.* This relationship should consist of some distinguishing characteristics common to both the extraneous offense and the offense charged. *Id.; Russell,* 665 S.W.2d at 778; *Ransom v. State,* 503 S.W.2d 810, 812 (Tex.Crim.App.1974).

In the instant case, both the offense charged and the extraneous offense of C.V. involved aggravated sexual assaults. The

---

1. When using an extraneous offense to show identity, the identity of the perpetrator must be "clearly proved." *Landers v. State,* 519 S.W.2d 115, 120 (Tex.Crim.App.1974).

sexual assault in each case was committed by use of a knife held at the victim's throat. In both cases, the victims' eyes were taped closed with duct tape and their hands taped behind them. Moreover, the assailant taped their ankles/feet before he left. Both victims were made to engage in oral sex with their assailant. Both crimes were committed by a white assailant and both occurred in Denton.

The law is well settled that "the common element may be the mode of commission of the crimes, or the mode of dress of the perpetrator, or any other element which marks both crimes as having been committed by the same person." *Ford v. State,* 484 S.W.2d 727, 730 (Tex.Crim.App.1972). Based upon the "mode of commission of the crimes" we find the extraneous offense involving C.V. was admissible to prove identity. Therefore, appellant's first point of error is overruled.

■ Appellant's third point of error also concerns admissibility of the extraneous offense of C.V. Specifically, Clarke argues such testimony is inadmissible because it was too remote in time for its relevance to outweigh the undeniable prejudicial effect.

Appellant relies on *Bachhofer v. State,* 633 S.W.2d 869 (Tex.Crim.App. [Panel Op.] 1982) to support his contention. In *Bachhofer* the defendant appealed from a conviction of indecency with a child. At trial the State introduced evidence of a fondling offense committed by the defendant four years and four months prior to trial. *Id.* at 872. The court held the extraneous offense was too remote to be admissible. *Id.*

In the instant case, the extraneous offense involving C.V. occurred on April 8, 1986. The charged offense occurred on March 22, 1987. These offenses took place less than one year apart.

Remoteness is simply one factor to be considered in determining the admissibility of an extraneous offense. *Ford,* 484 S.W.2d at 729–30. The record in the present case reveals yet another extraneous offense, occurring two months after the charged offense, in which the victim was able to positively identify appellant as her assailant. The charged offense coupled with the two extraneous offenses are sufficient to show a continuing course of conduct. *McDonald v. State,* 513 S.W.2d 44, 52 (Tex.Crim.App.1974). The extraneous offenses showed Clarke's similar use of duct tape as well as his treatment of his victims. Under these facts, we find the extraneous offense of C.V. was not too remote. Accordingly, appellant's third point of error is overruled.

Next, appellant asserts in points of error two and four that the two extraneous offenses did not have sufficient similarities to the charged offense and therefore should not be admissible.

■ An extraneous offense is admissible to prove identity if there is some distinguishing characteristic common to both the extraneous offense and the offense for which the accused is on trial. *Ford,* 484 S.W.2d at 729. "The common distinguishing characteristic may be the proximity in time and place of the extraneous offense to the offense for which the accused is being tried." Or, as mentioned under point of error one, the common element may be the "mode of commission of the crimes, or the mode of dress of the perpetrator, or any other element which marks both crimes as having been committed by the same person." *Id.* at 729–30. When the accused is clearly identified and shown to be the perpetrator of the extraneous offense, however, the mere fact that certain dissimilarities are present does not make the extraneous offense inadmissible. *Ransom,* 503 S.W.2d at 813.

Clarke argues that the following dissimilarities between the charged offense and the extraneous offense involving C.V. render the extraneous offense inadmissible: the offense with C.V. occurred in a public place with no forced entry, C.V.'s assailant whispered throughout the assault and C.V. suffered a physical injury.

The record indicates however, that both victims' hands and feet were bound with

duct tape. In both offenses the assailant had trouble getting an erection and both victims were forced to perform oral sex on the assailant. Also, the assailant in both offenses had his face covered and utilized a knife.

■ Concerning Clarke's fourth point of error, a second witness, D.L., endured a sexual assault in Denton approximately two months after the charged offense. D.L., a North Texas State University student, testified that her assailant burst through her apartment door around midnight brandishing a knife. The intruder wore black shorts, a black shirt with writing on it, a black toboggan cap, and a cloth mask.

D.L.'s eyes were covered with duct tape and she was forced to have sexual intercourse with her assailant over the next six hours. She was ordered to wash herself twice to get rid of the sperm. D.L. later identified appellant in a photographic lineup and recognized his voice from a voice lineup. She also identified appellant at trial as being her attacker.

Clarke also attempts to show this court how the following factors of the extraneous offense involving D.L. render the offense inadmissible because of the lack of sufficient similarities: the offense with D.L. involved a much more serious sexual assault which extended over a period of six hours, D.L.'s assailant conducted an extensive and personal conversation with her, speaking about the events in his life and giving detailed instructions to the victim should she become pregnant.

However, the record reveals that in both the charged offense and the extraneous offense the victims were attacked at their home during the night. The assailant in both offenses utilized duct tape to blindfold his victims and to tie their hands and feet. The assailant in both offenses had his face covered during the attack. The assailant asked both victims about their personal life. The victims were made to engage in sexual intercourse several times with the assailant. The assailant washed the victim's vagina or made the victim wash her vagina before he left. The assailant in both cases utilized a knife. The victims were made to perform oral sex on their assailant. Both victims were made to engage in sex against the dresser. The assailant asked both victims whether they had a gun in the house. The assailant in both cases got very angry with his victims if he thought they were lying to him.

Based upon the record, we find the similarities in the offense charged and both extraneous offenses are sufficient to render the extraneous offenses admissible. *See Lewis v. State,* 674 S.W.2d 423, 427 (Tex.App.—Dallas 1984, pet. ref'd); *Ransom,* 503 S.W.2d at 812–13. Accordingly, appellant's second and fourth points of error are overruled.

■ Appellant complains in his fifth point of error that the trial court erred in admitting all evidence of Clarke's arrest as well as the alleged mask worn by D.L.'s assailant because they were the result of an illegal arrest.

Tom Dirickson testified at trial that on the evening of May 27, 1988, he was at home with his wife and son. Dirickson began to investigate after he heard a sound come from the back of the house. He noticed a screen lying on the patio floor and a man who had jumped off the patio and was running away. Dirickson only saw the back of the suspect but noticed the man's large thighs and buttocks and also that he was wearing dark shorts and a t-shirt and was of average height.

Officer David Atcheson, a Denton police officer, testified that he received a call at 12:03 a.m. that there had been an attempted burglary at Dirickson's home. Dirickson gave a description of the suspect to Atcheson who then proceeded to travel through the neighborhood. On the way to answering the call, Atcheson noticed a person walking in the general area of Dirickson's home. After taking a description of the suspect Atcheson went back to the

street where he first saw the man. Officer Atcheson noticed a white male on Londonderry Street who fit the description given by Dirickson and whom he identified as Clarke. Atcheson further testified that after Clarke saw Atcheson in a marked police car he took off running. Clarke stopped running after he ran between about four parked cars.

Officer Atcheson approached Clarke, who stopped on request, and he advised Clarke he was being detained for investigation. Clarke was not actually under arrest when he was stopped. During this detention of Clarke, Officer Atcheson noticed a bulge in the crotch area of Clarke's pants but admitted it did not appear to be the outline of a weapon. Another officer who had arrived on the scene patted down Clarke and recovered a length of twine.

Clarke then pulled a cloth from his pants in response to questioning by police officers. Clarke explained this was used to alleviate the effects of a bladder control problem.

Dirickson was brought to the scene of Clarke's detention where he identified Clarke as the person he had seen attempting to break into his residence. Clarke was then placed under arrest for attempted burglary.

D.L. testified that the cloth pulled from Clarke's pants was the one worn as a mask by her assailant.

Clarke relies on *Livingston v. State,* 739 S.W.2d 311, 327 (Tex.Crim.App.1987) to support his contention that he was actually arrested when he was "detained" by Officer Atcheson and, therefore, his detention was illegal. In *Livingston* the Court of Criminal Appeals stated that under TEX. CODE CRIM.PROC.ANN. art. 15.22 (Vernon 1977): "An individual is arrested when he has been actually placed under restraint or taken into custody." *Livingston,* 739 S.W.2d at 327. If a person's liberty of movement is restrained or restricted then the arrest is complete. *Id.*

However, circumstances short of probable cause for arrest may justify a tempo-rary detention for the purpose of investigation. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967); *Livingston,* 739 S.W.2d at 329. To justify an investigative stop, an officer must have specific articulable facts which, in light of his experience and personal knowledge, together with other inferences from those facts, would warrant the intrusion on the person stopped for further investigation. *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880; *Livingston,* 739 S.W.2d at 329; *Schwartz v. State,* 635 S.W.2d 545, 547 (Tex.Crim.App. [Panel Op.] 1982). There must be a reasonable suspicion by the law enforcement officer that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detained person with unusual activity, and some indication that the activity is related to crime. *Schwartz,* 635 S.W.2d at 547; *Armstrong v. State,* 550 S.W.2d 25, 30 (Tex.Crim.App.1977) (opinion on reh'g). If the activity relied upon by the officer is as consistent with innocent behavior as it is with criminal activity, a detention based on those activities is unlawful. *Johnson v. State,* 658 S.W.2d 623, 626 (Tex.Crim.App. 1983) (en banc); *Livingston,* 739 S.W.2d at 326–27.

In the present case, Officer Atcheson was justified in his initial detention of Clarke. Even though Atcheson detained the first person he saw, he knew that at the time of the investigative stop of Clarke that an attempted burglary had occurred in the area and that the suspect was a white male of average height with large thighs and buttocks, pale complexion and wearing dark shorts with a white t-shirt. The State argues that this information was sufficient to warrant the intrusion on Clarke for further investigation. *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880; *Schwartz,* 635 S.W.2d at 547. We agree. We hold that the detention of Clarke for further investigation was proper and was legally conducted. We agree with the authority cited by Clarke that in order to justify a temporary detention for investigative purposes, the law en-

forcement officer must have specific articulable facts which, in light of his experience and personal knowledge, together with other inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen detained for further investigation. It is also true that detention based on a hunch is illegal but that is not what occurred in the present case.

Officer Atcheson had more than a general description to go by when he stopped Clarke. Considering that Clarke met the description and that an attempted burglary had just occurred in the vicinity, the detention was not merely based on a hunch. Clarke's activity was not as consistent with innocent activity as with criminal activity when he ran away from the officer. Therefore, since the detention was lawful, there was no need to suppress any evidence arising from the detention.

■ Clarke argues that a detention for investigatory purposes must be limited; it must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Ussery v. State*, 651 S.W.2d 767, 770 (Tex.Crim.App.1983) (en banc). In the present case the facts show that reasonable suspicion to detain Clarke became probable cause when: 1) the officer reasonably believed that the white male fitting the description of the intruder might have been involved in the offense; 2) when Clarke began running when he saw the officer; and 3) when Clarke gave conflicting stories about where he was going. Therefore, there was no reason to release Clarke immediately upon commencement of the investigatory detention, as Clarke argues to this court.

The continuation of the temporary detention of Clarke was justified to determine if Dirickson could identify the suspect. *See Mays v. State*, 726 S.W.2d 937, 944 (Tex. Crim.App.1986) (en banc). The temporary detention does not appear to have been a subterfuge to allow officers to hold Clarke until Dirickson could be brought to the scene.

Appellant's fifth point of error is overruled.

■ In his sixth point of error Clarke complains the trial court erred in admitting a toboggan cap and knife found under cars parked near the area where Clarke was arrested and also where Clarke had been seen running prior to his arrest. Specifically, Clarke contends these exhibits were not shown to be connected to him because Officer Atcheson found these items at least two hours after Clarke had been taken to jail.

D.L. identified the knife as being similar to the one she had seen on the night of her assault and the toboggan cap as similar to one worn by her assailant. During a consent search of Clarke's home, a scabbard was found into which the knife fit perfectly, but no knife was found in Clarke's house.

Clarke complains on appeal that the knife and cap were not shown to be connected to him and therefore not admissible. At trial, however, the objection made by Clarke's attorney was based on the evidence being used to prove an extraneous offense. Therefore, nothing is preserved for review concerning whether the knife and cap could be connected to Clarke. *Cisneros v. State*, 692 S.W.2d 78, 82 (Tex.Crim.App.1985).

Appellant's sixth point of error is overruled.

■ Appellant's seventh point of error complains of improper bolstering of an unimpeached voice identification of appellant by D.L.

Lonnie Fleming, a sergeant with the Denton Police Department, testified as to a voice line-up procedure used by Fleming to determine if D.L. could identify appellant's voice. Fleming testified D.L. heard three voices. The prosecutor asked Fleming to describe for the jury, without stating what D.L. had said, what D.L. did after hearing the third voice. Fleming testified that "She grabbed her face and began to tremble, and when she took her hands down she was crying." The prosecutor then established that the third voice belonged to Clarke.

The law is well settled that bolstering occurs when one item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party. *Pless v. State*, 576 S.W.2d 83, 84 (Tex.Crim. App. [Panel Op.] 1978); *Lyons v. State*, 388 S.W.2d 950 (Tex.Crim.App.1965); *Acker v. State*, 421 S.W.2d 398 (Tex.Crim.App.1967).

The testimony complained of by Clarke falls within the rule governing bolstering. D.L. was cross-examined with respect to her visual identification of Clarke and Clarke's attorney attempted to impeach her on these grounds, not on D.L.'s voice identification of Clarke. On this ground, the cross-examination was limited to what D.L. noticed about her assailant's voice.

Bolstering testimony must be related to the impeachment to be admissible. The rehabilitating facts must meet a particular method of impeachment with relative directness. *Farris v. State*, 643 S.W.2d 694, 697 (Tex.Crim.App.1982).

It is clear in the present case that the testimony of Officer Fleming constituted impermissible bolstering. We must now determine whether the error calls for reversal of the conviction.

TEX.R.APP.P. 81(b)(2) provides that:

If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

In the present case, the jury could reasonably infer from the other evidence presented at trial showing the similarity of the crimes that the identity of D.L.'s assailant was the same as the complainant's. It is clear beyond a reasonable doubt that the error did not contribute to the punishment because of the other evidence available to determine guilt. Therefore, the error was harmless.

Appellant's seventh point of error is overruled.

Clarke next contends the trial court erred in overruling his objection to the prosecution argument striking at him over the shoulders of counsel and in denying his request for a mistrial based upon improper prosecution argument implying the commission of an extraneous offense.

The purpose of closing argument is to facilitate the jury in properly analyzing the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone and not on any fact not admitted into evidence. *Campbell v. State*, 610 S.W.2d 754, 756 (Tex.Crim.App.1980). To be permissible, jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Bell v. State*, 724 S.W.2d 780, 803 (Tex.Crim.App.1986), *cert. denied*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987); *Franklin v. State*, 693 S.W.2d 420, 429 (Tex.Crim.App.1985), *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986).

When an argument exceeds the permissible bounds of the above areas, such will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, is violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceedings. *Bell*, 724 S.W.2d at 803; *Mathews v. State*, 635 S.W.2d 532, 539 (Tex.Crim.App. [Panel Op.] 1982).

The test to determine whether improper jury argument is harmless error is not whether a conviction could have been had without the improper argument, but whether there is a reasonable possibility that the argument complained of might have contributed to the conviction or the punishment assessed. *Garrett v. State*, 632 S.W.2d 350, 353–54 (Tex.Crim.App. [Panel Op.] 1982); TEX.R.APP.P. 81(b)(2). In making this determination, the appellate

court must review the evidence at the guilt-innocence stage as well as that adduced at the punishment phase of the trial. *Garrett*, 632 S.W.2d at 353–54.

■ Appellant complains of the following portion of the State's argument:

You know, for the last week there has been times that I've—I felt kind of lonely sitting over here all by myself but, you know, the more I thought about it the more I decided that I didn't need a Mr. Glover and I didn't need a Mr. Nation because I have truth and I have justice on my side, and that's all that I need—

The court has sometimes referred to improper attacks on the defendant's attorney as "striking at the defendant over the shoulders of counsel," although this characterization ordinarily represents only a conclusion of impropriety rather than a test for recognizing it. Generally, in order for a disparaging remark which is directed at defense counsel to be deemed improper, the remark must be "directed at [the defendant] via his counsel, for the purpose of inflaming the minds of the jurors to the prejudice of the accused." *Todd v. State*, 598 S.W.2d 286, 297 (Tex.Crim.App. [Panel Op.] 1980).

Proper analysis of argument covering the tactics of opposing counsel is both important and difficult. On the one hand, debunking the defense theory of the case is the prosecutor's perogative, and in fact, it's his job. On the other hand, character assassination or implication of unethical conduct not supported by the record obviously should not be condoned. Propriety or impropriety depends heavily on the tone and contents of the remarks. *See Carrillo v. State*, 566 S.W.2d 902 (Tex.Crim.App. [Panel Op.] 1978). In *Gomez v. State*, 704 S.W.2d 770 (Tex.Crim.App.1985) (en banc), argument that implied the defendant's attorney would allow perjury to win the case was held to be improper in that it invited the jury to discredit the appellant's defense.

An allegation that a defendant's attorney had "led him around by the nose" may be excused as simply a "poor choice of words." *Williams v. State*, 668 S.W.2d 870, 871 (Tex.App.—San Antonio 1984, no pet.). But in *Bell v. State*, 614 S.W.2d 122 (Tex.Crim.App. [Panel Op.] 1981) where comments regarding defense counsel's duty to see that his client got off "even if it means putting on witnesses who are lying" was held error that was not cured by a strong instruction to the jury. Likewise, a prosecutor's uncalled-for side-bar remark may require a reversal. *Fuentes v. State*, 664 S.W.2d 333 (Tex.Crim.App. [Panel Op.] 1984).

We find the complained of argument in this case was not improper for the reasons stated by appellant. The above statement did not constitute "striking at [appellant] over the shoulders of counsel." Point of error eight is overruled.

■ Clarke argues in his ninth point of error that the trial court erred in overruling his motion for mistrial based upon improper prosecution argument implying commission of an extraneous offense.

During final argument of the guilt-innocence phase of trial the prosecutor argued:

What else did the defense not even touch during their closing argument? They didn't touch the event of May the 27th of 1987—didn't even touch the little stroll that Mr. Clarke was making down Londonderry with his twine and his knife and his cap and his mask stuffed down his pants—didn't even touch it. Why not? Because there is not an explanation for it. The only explanation for it, is what you already know, here's a man dressed totally in black, just like he was when he went to [D.L.'s] four nights earlier with the same mask, knife, cap, twine, ladies and gentlemen. If it hadn't been for the actions of the Denton Police Department, the same people that they label as buffoons, as incompetent, I submit to you it's a reasonable deduction from the evidence that we would have had to clear one more space on that bench—

The record does not reflect what "clear one more space on that bench" means. Appellant argues that the statement made by the prosecutor referred to the fact that the complainant in the charged offense as well as in the two extraneous offenses were sitting on the front bench of the spectator's portion of the courtroom. Since there is no evidence in the record that any of the victims were seated on the referred to bench, the appellant's statement is outside the record. As such, we reject appellant's argument regarding the alleged improper prosecution argument since no error is preserved. Appellant's ninth point of error is overruled.

■ Appellant also challenges the sufficiency of the evidence in his eleventh point of error since the complainant in the charged offense could not identify appellant because her assailant's face was covered prior to her eyes being blindfolded.

In reviewing the sufficiency of the evidence in either a direct or circumstantial evidence case, we must view the evidence in the light most favorable to the prosecution and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. State,* 672 S.W.2d 801, 803 (Tex.Crim.App.1984); *Houston v. State,* 663 S.W.2d 455, 456 (Tex.Crim.App. 1984) (opinion on reh'g); *Wilson v. State,* 654 S.W.2d 465, 471–72 (Tex.Crim.App. 1983) (opinion on reh'g). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia,* 443 U.S. 307, 319 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). However, a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the defendant. *Johnson v. State,* 673 S.W.2d 190, 195 (Tex.Crim.App.1984); *Jackson,* 672 S.W.2d at 803.

In the present case, appellant was charged with aggravated sexual assault.

*See* TEX.PENAL CODE ANN. § 22.021 (Vernon 1989). The jury found Clarke guilty of the offense and assessed punishment at ninety-nine years in the Texas Department of Corrections. Clarke contends that the fingerprint evidence alone was not sufficient to sustain a conviction for aggravated sexual assault and therefore, the evidence of his identification was insufficient.

The record reveals that on March 23, 1987, the complainant was at home alone. At approximately 12:30 a.m., she got up from where she had been sleeping, closed the windows, and went to bed. After she fell asleep, the complainant was awakened by a knife to her throat. A voice said, "If you make a sound or move, I will kill you." Because the assailant had something over his face, she could only see his eyes. She did, however, see that the skin of the assailant was white. The assailant tied her hands with some type of rope and put a blindfold made out of cloth around her eyes. The complainant was forced to engage in sex with the assailant. The assailant could not keep an erection and forced the complainant to perform oral sex. The assailant asked the complainant numerous questions about her personal life. The assailant wandered around the house and found a roll of duct tape in the kitchen which he used to cover the complainant's eyes after he removed the blindfold. The assailant engaged in sex with the complainant against the dresser and afterward led her to the bathroom and washed her. The assailant then taped her hands and feet and told her not to tell anyone and that he had friends in the police department. Before leaving, the assailant covered her with a sheet.

A fingerprint was lifted from the duct tape that the assailant had used to tape complainant's eyes, hands, and feet. The fingerprint lifted from the tape belongs to appellant. Also, the assaults of C.V. and D.L. were placed in evidence to assist the jury in determining the identity of the complainant's attacker.

We find that the evidence in the instant case was sufficient to support the convic-

tion. Accordingly, appellant's eleventh point of error is overruled.

■ Appellant next asserts error by the trial court in overruling his objection to the State's exercise of a peremptory challenge on a potential juror.

At the outset, it is important to note that Clarke is white, and the complained of potential juror was black. After the parties had made their peremptory challenges, but before the jury was impanelled and sworn, appellant objected to the composition of the jury based upon *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

The prosecutor testified she had used a peremptory strike on the potential juror because the woman was single, not gainfully employed, and had no household members that were gainfully employed. Therefore, she was not considered by the State to be a productive member of society. The juror also listed a religious preference which the prosecutor did not understand. The prosecutor also struck a white female potential juror who did not list any gainful employment.

The prosecutor also felt that the potential juror appeared to be more interested in defense counsel's voir dire than the prosecutor's. This was also the reason for striking another white female juror.

A final reason listed for striking the potential juror was that rehabilitation, in addition to punishment, was the potential juror's chief reason for assessing punishment in a case.

In *Batson,* the United States Supreme Court stated that the State's purposeful or deliberate denial of jury participation to black persons because of race violates a defendant's rights under the Equal Protection Clause of the United States Constitution. Accordingly, a prosecutor may not challenge potential jurors solely on account of their race. If the defendant raises an inference of purposeful discrimination through the State's use of its peremptory strikes, and the trial court determines that a prima facie case of discrimination exists, then the burden shifts to the prosecutor who must come forward with a neutral explanation for the challenges. *See also, Keeton v. State,* 724 S.W.2d 58, 65 (Tex. Crim.App.1987) (en banc). The improper exclusion of even one venireperson based on race constitutes reversible error. *Id.* at 65 n. 5.

Appellant refers this court to *Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972) and *Seubert v. State,* 749 S.W.2d 585, 586–87 (Tex.App.—Houston [1st Dist] 1988, pet. granted), where the court ruled:

> We hold that, whatever his race, a criminal defendant has standing to challenge the system used to select his grand or petit jury, on the ground that it arbitrarily excludes from service the members of any race, and thereby denies him due process of law.

*Peters,* 407 U.S. at 504, 92 S.Ct. at 2169.

*Seubert,* which seems to support appellant's position, is now pending on petition for discretionary review with the Court of Criminal Appeals and should not, at this point, be relied upon as a precedential authority. Furthermore, this court held in *Perry v. State,* 770 S.W.2d 950, 951–52 (Tex.App.—Fort Worth 1989, no pet.) that an objection based on *Batson* does not preserve any error in striking a venireman of a race different from the defendant.

The standard of review in Texas for *Batson* issues is whether purposeful discrimination was established. *Keeton v. State,* 749 S.W.2d 861, 870 (Tex.Crim.App.1988) (en banc). The evidence is to be considered in the light most favorable to the trial judge's rulings and if the trial court's rulings are supported by the record they will not be disturbed on appeal. *Id.*

Because we find Clarke failed to establish a prima facie case under *Batson* because he is a different race than the potential juror, and that no purposeful discrimination was established, appellant's twelfth point of error is overruled.

Finally, in his tenth point of error, appellant complains of failure of the trial court to grant a curative instruction based upon appellant's objection to prosecution argument inviting the jury to consider extraneous offenses in, assessing punishment.

During final argument in the punishment phase of trial, the prosecutor argued:

> Ladies and Gentlemen, you can consider the evidence that you heard in this entire trial when you are assessing your sentence, and I submit to you that there cannot be a set of facts and circumstances that are more reprehensible, more repulsive, more repugnant to human sensibilities then the set of facts and circumstances that you heard in this case because, ladies and gentlemen, we don't have one rape, we don't have two rapes, we have three rapes—

Appellant objected on the grounds that the prosecutor was asking the jury to assess punishment based upon extraneous offenses. The trial court sustained the objection but denied appellant's request for a curative instruction.

Later in her punishment argument, the prosecutor asked for a life sentence, stating:

> I'm just asking that you be the means to that end, ladies and gentlemen. [Complainant] deserves it, [C.V.] deserves it, and [D.L.] ...
>
> ....
>
> —society deserves it.

Appellant again objected based upon the prosecutor's request that the jury assess punishment based upon extraneous offenses. The trial court again sustained this objection but similarly denied appellant's request for a curative instruction.

During its deliberations the jury sent out the following note to the trial court:

> Judge Vick: Can we base our penalty on the evidence concerning [C.V.] and [D.L.]? This concern is based on the objections posed during the final close.

The trial court answered "Please refer to the Court's charge and be governed thereby."

In *Lomas v. State*, 707 S.W.2d 566 (Tex. Crim.App.1986) (en banc) the court held that reversible error was committed when the prosecutor asked the jury to assess punishment for collateral crimes. The court noted that it had repeatedly emphasized the importance of avoiding a final argument that encouraged the jury to try, convict or punish a defendant additionally for collateral crimes that have become apparent through introduction of the facts and circumstances immediately surrounding the offense charged. *Id.* at 569. The State cannot point out the existence of a collateral offense and thereby request additional punishment for that collateral offense. Such an argument seeks to punish a defendant for an act for which he is not on trial. The State must more narrowly show that the collateral offense in some way further enhances the gravity of the charged offense and, in fact, is inexorably connected with the charged offense. *Id.* With respect to the argument made by the State in *Lomas*, the court held that it did not simply suggest the collateral crime in some way clarified the defendant's "mean" intentions regarding the aggravated rape. Instead, it invited the jury to make a separate determination of punishment for a collateral crime that occurred three to four months after the aggravated rape. Therefore, the court found that the State, by inviting the jury to punish the defendant for a remote collateral crime, went beyond the bounds of merely asking the jury, in assessing punishment, to consider the facts and circumstances immediately surrounding the charged offense. *Id.* at 570; *see also Melton v. State*, 713 S.W.2d 107, 114 (Tex.Crim.App.1986) (en banc).

In the present case, the prosecution argument clearly asked the jury to assess punishment based upon the extraneous offenses occurring to C.V. and D.L. The prosecutor initially asked the jury to consider the "evidence that they heard in the

entire trial" and then stated that there was not one, or two, but three rapes at issue. The prosecutor then argued that the complainant in the present case, C.V., and D.L. deserved the jury's assessment of a life sentence against appellant.

■ Now we must determine whether the discussion of these two extraneous offenses during final argument in the punishment phase of trial resulted in reversible error under TEX.R.APP.P. 81(b)(2). Rule 81(b)(2) mandates that this court focus upon the error and determine whether it contributed to the conviction or punishment. This involves a review of the entire record but the concern is solely to trace the impact of the error. *Harris v. State*, No. 69,366, slip op. at TC–89–37–39 (Tex.Crim. App., June 28, 1989) (not yet reported). This court is obligated to examine the entire record in a neutral, impartial, and even-handed manner and not "in the light most favorable to the prosecution." *Id.*

If an appellate court rules that an error is harmless it is, in essence, asserting that the nature of the error is such that it could not have affected the jury, so the jury must have relied on overwhelming evidence of guilt in the first place. *Id.* at 35. If the evidence is so overwhelming as to dissipate the error's effect upon the jury's function in determining the facts so that it did not contribute to the verdict then the error was harmless. Otherwise it is not. *Id.*

Normally, this involves some degree of speculation. This is not necessary, however, in the present case. The jury sent a note to the court asking if they could assess punishment based upon the extraneous offenses occuring to C.V. and D.L. Obviously, the jury well understood the natural and necessary effect of the State's argument. The trial court did sustain appellant's objections to these arguments. However, by failing to grant appellant's request for a curative instruction, the court left the jury with the impression that it could consider these arguments. The jury evidenced its confusion in writing to the court. In any event, there is no issue in this case as to whether these arguments could have been cured by a proper instruction to disregard. It should also be noted that the prosecutor compounded the initial error by shortly returning to the same impermissible subject.

The prosecutor's argument was in violation of the evidentiary purpose for admission of the extraneous offenses, if not in violation of the limiting instruction itself. Extraneous offenses were not admissible to show that appellant was a criminal generally, or acted in conformity with any criminal tendencies expressed in those offenses, but only to show proof of identity. By its argument in the punishment phase of the trial, the State in effect, informed the jury that it could punish Clarke for being a criminal generally and that the true purpose for admission of these extraneous offenses was to allow for enhanced punishment. The prosecution argument went beyond the bounds of any permissible argument with reference to extraneous offenses.

Further, it cannot be said in any sense that the prosecutor's argument was harmless, considering that Clarke received a ninety-nine year sentence in this case.

Based upon the facts and circumstances in this case, one cannot escape the conclusion that the jury did, in fact, assess punishment based upon extraneous offenses at the express and improper invitation of the prosecutor. For this reason we sustain appellant's tenth point of error.

Because we find error solely in the punishment stage of trial, we remand this cause to the trial court for a new trial on punishment only pursuant to TEX.CODE CRIM.PROC.ANN. art. 44.29(b). Accordingly, the judgment of the trial court is reversed and remanded for a new trial as to punishment.