IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-262-CR





CEDRIC TERRANCE JONES,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE




 



FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT



NO. 39,718, HONORABLE JACK W. PRESCOTT, JUDGE PRESIDING



 





 A jury found appellant guilty of the offense of delivery of a controlled substance,
cocaine, in an amount less than twenty-eight grams. See Tex. Health & Safety Code Ann.
§ 481.112 (Pamph. 1992) ("Texas Controlled Substance Act"). Punishment was assessed by the
court at ten years' confinement.

 Appellant asserts two points of error. In his first point of error, appellant contends
the evidence is insufficient to support the conviction. In his remaining point of error, appellant
alleges that the court erred in overruling his objection to the prosecutor's argument commenting
on defense counsel's ability as an attorney. We overrule appellant's points of error and affirm
the judgment of the trial court.

 In his first point of error, appellant asserts that the evidence is insufficient to
support the conviction. More specifically, appellant contends that a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other
reasonable hypothesis except that of the guilt of the accused.

 Killeen police officer John Mosley testified that the alleged delivery of cocaine
occurred on the night of November 9, 1990, as a part of an undercover operation known as "Blue
Christmas." The operation was directed to areas in Killeen where police had received a large
number of complaints regarding narcotic activity. Mosley did not witness the transaction in
question, but listened to and recorded statements from a transmitting device that had been placed
on undercover officer Dale Cobb. Mosley did not hear appellant's voice at any time during the
transaction nor was appellant's voice on the transcription admitted as evidence in the trial.

 Officer Cobb testified that on the occasion in question he went to the home of
Bobby Booker. Cobb pretended to be a drug user and Booker directed him where to drive to
make a purchase. At Booker's direction, Cobb stopped his car behind a red vehicle with an
Oregon license plate. Cobb gave Booker three twenty-dollar bills to use in making a purchase. 
Booker got out and walked to the driver's side of the vehicle. Cobb was parked directly behind
the red vehicle with his car's headlights on.

 Cobb had talked to appellant "several times" on prior occasions and recognized
appellant when he stepped from the driver's side of the car. Following a conversation between
Booker and appellant, Cobb saw appellant "reach inside his pocket, hand Booker something,
Booker hand him the money." During the transaction Cobb was relaying what he observed to
Mosley. Cobb related the appellant was wearing the exact same clothing he had observed
appellant wearing on prior occasions. Booker came back to the car "with his hand where I could
see it, sit in, and showed me the rock." Cobb took the "rock" from Booker, and at Booker's
request, allowed Booker to keep the ten dollar change "for making the deal." After leaving
Booker, Cobb proceeded to a prearranged location where he turned the "rock" over to Mosley.

 D.P.S. chemist Joel Budge testified that his analysis of the exhibit, identified as the
object Mosley received from Cobb, revealed that it was what is commonly known as crack cocaine
and contained 0.21 grams of cocaine.

 Highway patrolman Frank Page testified he stopped a vehicle bearing a buyer's
license tag on December 23, 1990, that was driven by a person later identified as the appellant.
Appellant had neither a driver's license nor proof of liability insurance. Information appellant
furnished Page did not "check out" when Page contacted the dispatcher in the Lampasas D.P.S.
(Department of Public Safety) office. Page was able to determine that appellant had given him
a fictitious name. Appellant was taken to the city jail in Killeen where he was identified as the
person for whom an outstanding warrant was pending in the "Blue Christmas" operation.

 After learning appellant's true identity, Page transported appellant to the Bell
County jail. After advising appellant that the warrant reflected the amount of bond was twenty
thousand dollars, Page related that appellant stated:



He told me he had plenty of money. He had the money but he wasn't intending
on wasting his money to get out of jail when he knew he would get a boot camp
sentence later in court. It would be no big deal to him.



 Appellant directs our attention to Cobb's testimony reflecting his inability to
observe anything more than something passed between appellant and Booker. Appellant suggests
there are a number of reasonable hypotheses that exclude the inference that appellant sold cocaine
to Booker, such as: (1) something besides illegal contraband was exchanged; (2) other persons
in appellant's vehicle gave Booker the "dope"; (3) Booker may have had the cocaine in his
possession, though he denied it, since he was not searched prior to the transaction.

 When reviewing a challenge to the sufficiency of the evidence to support a
conviction, an appellate court must determine whether, viewing the evidence in the light most
favorable to the conviction, any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Butler v. State,
769 S.W.2d 234, 239 (Tex. Crim. App. 1989).

 In Hankins v. State, 646 S.W.2d 191, 199 (Tex. Crim. App. 1983), the Court of
Criminal Appeals concluded that it was no longer necessary to submit a charge on circumstantial
evidence, reasoning that direct and circumstantial evidence were to be treated with equal dignity. 
In Carlsen v. State, 654 S.W.2d 444, 449 (Tex. Crim. App. 1983), (1) the court adopted the Jackson
v. Virginia standard for reviewing the sufficiency of the evidence in all cases, direct and
circumstantial. However, the court went on to say that it was not abolishing the old "exclusion
of reasonable hypotheses" test, stating that it would remain a criterion to be considered in
reviewing circumstantial evidence cases. Id.

 Cobb witnessed an exchange between Booker and appellant. Cobb testified that
Booker returned to the vehicle "with his hand where I could see it." Booker gave Cobb the object
in his hand. An analysis of the object given Cobb reflected that it contained 0.21 grams of
cocaine.

 Appellant's volunteered statement to officer Page that he was not going to waste
money making bond because he "knew he would get a boot camp sentence later in court" reflected
a consciousness of guilt. In Torres v. State, 794 S.W.2d 596, 598 (Tex. App. 1990, no pet.), the
court stated:



 A `consciousness of guilt' is perhaps one of the strongest kinds of evidence of
guilt. It is consequently a well accepted principle that any conduct on the part of
a person accused of a crime subsequent to its commission, which indicates a
`consciousness of guilt' may be received as a circumstance tending to prove that
he committed the act with which he is charged (citation omitted).



 Viewing the cumulative effect of all the incriminating facts, utilizing the "exclusion
of reasonable hypothesis" test, we conclude that any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Appellant's point of error is
overruled.

 In his second point of error, appellant asserts the court erred in overruling his
objection to the prosecutor commenting on appellant's counsel's ability as a lawyer. Appellant
contends the prosecutor's argument attacking defense counsel constituted an effort to inflame the
minds of the jury to appellant's prejudice.

 Appellant's complaint is directed to the court's action in overruling his objection
to the following argument by the prosecutor:



 What Mr. Wells [defense counsel] is talking about really when you boil
down his whole argument is a conspiracy that the entire Killeen Police Department,
the District Attorney's Office of Bell County, Texas --



 Prior to the prosecutor's argument, defense counsel's argument was directed to the
absence of appellant's voice on the recording made at the time of the alleged offense. Defense
counsel argued:



Everything that you heard and as I said, I'm going to ask you to listen to that tape
how we came up with Cedric Jones [appellant]. I guess he pulled it out of the sky
because he [Cobb] hasn't busted Cedric Jones.


 . . . .


 Now are you going to convict this young man on the had, ha, ha, ha, it's
Cedric, not backed up by anything, not supported by anything. If Cedric and Cobb
were such buddies and he's going to make a good case against old Cedric Jones,
he's going to put his head out the door and say hey, Ced, come on over man. 
Shoot the bull. Shot the bull, but it wasn't Cedric Jones. He can't get him on the
tape. We'll just leave that part out. I'll wait for nobody else. I'll just put on the
tape it was Cedric Jones.


 . . . .


We don't have Cedric Jones. He wasn't there. The tape doesn't have it on there. 
Why? Because, Ladies and Gentlemen, just like he [Cobb] gave $10 to his buddy
for a tip, he's trying to sell you a bill of goods that I hope you won't let float.



 In Gomez v. State, 704 S.W.2d 770 (Tex. Crim. App. 1985), the court noted that
it had shown a special concern for final arguments that constitute accusations of improper conduct
directed at a defendant's attorney. In Gomez, the prosecutor argued that the defense attorney was
bringing witnesses into court "to manufacture evidence." Id. at 771. The court found the
implication of this argument was that defense counsel was engaging in the subornation of perjury. 
Id. at 772. The foregoing argument was followed by the prosecutor's statement that defendant's
attorney would do anything to get his client "off the hook." Id. at 771. The court concluded that
this argument, following the accusation of manufactured evidence, contained the clear implication
that defendant's attorney would suborn perjury, if necessary, to accomplish his objective. The
court held that the prosecutor's arguments invited the jury to discredit defense counsel, clearly
striking at the defendant over his attorney's shoulder, and was improper. In finding reversible
error, the court concluded that the cumulative effect of the two arguments was to deny the
defendant a fair and impartial trial. Id. at 773.

 In Bell v. State, 614 S.W.2d 122, 123 (Tex. Crim. App. 1981), the Court of
Criminal Appeals reversed a judgment where the prosecutor had argued that it was defense
counsel's duty to see that his client gets off "even if it means putting on witnesses who are lying." 
In Clarke v. State, 785 S.W.2d 860, 871 (Tex. App. 1990, no pet.), the court stated:



 Proper analysis of argument covering the tactics of opposing counsel is both
important and difficult. On the one hand, debunking the defense theory of the case
is the prosecutor's prerogative, and in fact, it's his job. On the other hand,
character assassination or implication of unethical conduct not supported by the
record obviously should not be condoned.



 Appellant asserts that his argument was directed to the credibility of undercover
officer Cobb and no reference was made to any conspiracy between the police department and the
prosecutor.

 While the prosecutor's argument may have been cut short by appellant's objection,
the jury may have logically inferred that the prosecutor was characterizing defense counsel's
argument to mean that the prosecutor and the police department had entered into a conspiracy to
convict the appellant. On the other hand, an equally logical inference would be that the thrust of
defense counsel's argument was that the police and the prosecutor's office condoned Cobb's
alleged contrived identification of appellant as the seller of the crack cocaine. Under these
circumstances, the prosecutor's argument would constitute an answer to the argument of opposing
counsel. See Bell v. State, 724 S.W.2d 780, 803 (Tex. Crim. App. 1986). 

 Moreover, we do not believe that the prosecutor's argument rises to the level of
impropriety condemned by the courts as constituting reversible error. See Gomez, 704 S.W.2d
at 773. Appellant's point of error is overruled.

 The judgment is affirmed.





 

 Tom G. Davis, Justice

[Before Justices Aboussie, Kidd and Davis*]

Affirmed

Filed: February 5, 1992

[Do Not Publish]































* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (1988).
1. Carlsen was prospectively overruled in Geesa v. State, No. 290-90 (Tex. Crim. App.,
November 6, 1991). Carlsen continues to apply to cases tried before November 6, 1991.