822 F.2d 718
 UNITED STATES of America, Appellant,
v.
Donald Glenn POMEROY, a/k/a Lawrence C. Campbell, a/k/a
Henry D. Dilday, Appellee,
and
Katherine L. Woods, a/k/a Kathy Woods, a/k/a Nora Sterns
 No. 86-5212
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 11, 1986
Decided May 29, 1987
Rehearing and Rehearing En Banc Denied June 1, 1987
 
 Robert J. Erickson, Washington, D.C., for appellant.
 Thomas A. Dickson, Bismarck, N.D., for appellee.
 Before LAY, Chief Judge, MAGILL, Circuit Judge, and HANSEN,* District Judge.
 MAGILL, Circuit Judge.
 
 
 1
 The Government appeals from an order of the district court[1] dismissing an indictment against Donald Glenn Pomeroy on sixth amendment speedy trial grounds, and we affirm.
 
 
 2
 I. BACKGROUND.
 
 
 3
 The essential facts leading up to the dismissal of the indictment against Pomeroy are not in dispute.
 
 
 4
 On March 5, 1982, a bank in Bismarck, North Dakota, was robbed at gunpoint by two persons. Later that day, police questioned Pomeroy and another individual, and released them both.
 
 
 5
 On March 11, 1982, a complaint and an arrest warrant, stemming from the North Dakota robbery, were issued for Pomeroy.
 
 
 6
 On April 15, 1982, Pomeroy was arrested in Canada for a robbery he allegedly committed there on July 10, 1981.
 
 
 7
 On April 21, 1982, a federal grand jury sitting in North Dakota handed down an indictment against Pomeroy, charging him with armed robbery of the Bismarck bank. Pursuant to the indictment, an arrest warrant for Pomeroy was issued on April 22, 1982.
 
 
 8
 On April 29, 1982, a Canadian court convicted Pomeroy of armed robbery in Canada and sentenced him to fourteen years imprisonment.
 
 
 9
 On October 1, 1983, the United States Attorney's office in North Dakota ("U.S. Attorney") received notification of Pomeroy's conviction and that he had appealed his conviction.
 
 
 10
 In April 1984, while his appeal was pending in the Canadian courts, Pomeroy requested the United States to extradite him to North Dakota to stand trial.
 
 
 11
 On October 23, 1984, Pomeroy received a letter from the United States Vice Consul ("Consul"), stating that the U.S. Attorney held his extradition request "in abeyance" pending completion of his Canadian sentence.
 
 
 12
 On November 7, 1984, the Consul wrote to the American Embassy in Ottawa, informing them that Pomeroy requested legal proceedings be commenced against him in the United States and that he be returned to the United States to stand trial.
 
 
 13
 On November 28, 1984, the Canadian court reversed Pomeroy's conviction. Pomeroy was held in Canada for retrial.
 
 
 14
 On April 19, 1985, the Consul wrote to Pomeroy, informing him that the Canadian authorities were not willing to release him until the outcome of his retrial had been determined.
 
 
 15
 On June 11, 1985, Pomeroy pled guilty to the Canadian charge. He was sentenced to a year and a day imprisonment.
 
 
 16
 On June 15, 1985, the U.S. Attorney's office received an FBI telex stating: "INFORMATION IS THAT POMEROY WILL BE PAROLED EARLY AND PERHAPS EVEN BY THE 10TH OF AUGUST 1985. IN VIEW OF THE SHORT SENTENCE IT IS IMPERATIVE THAT ACTION BE TAKEN AS SOON AS POSSIBLE."On October 31, 1985, Pomeroy was released from the Canadian prison[2] and deported to Montana, where he was immediately arrested by United States officials. He was then extradited to North Dakota and incarcerated pending trial.
 
 
 17
 While incarcerated, Pomeroy made several motions to the court, including a motion to dismiss the indictment on sixth amendment speedy trial grounds. The district court held a hearing on Pomeroy's motion, and on January 17, 1986, it entered an order dismissing the indictment with prejudice and ordering Pomeroy's immediate release.
 
 
 18
 Although the court discussed the possible applicability of the Speedy Trial Act, 18 U.S.C. Sec. 3161,[3] it based its decision on sixth amendment speedy trial grounds. The court found that, as applied to the facts of the case, the four factors set out in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1969), weighed in favor of dismissing the indictment against Pomeroy.[4]
 
 
 19
 Additionally, the court noted that various cases have placed an obligation on the government to seek extradition of an accused incarcerated in a foreign state when a treaty exists under which the accused could be extradited.[5] Because the treaty between Canada and the United States listed robbery as an extraditable offense, the court felt that the Government had an obligation to request Pomeroy's extradition despite the fact that Canadian officials had the option of deferring Pomeroy's surrender until he completed his sentence.
 
 
 20
 The Government subsequently moved to reconsider based on the Supreme Court's intervening decision in United States v. Loud Hawk, 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986), where the Court reversed an order dismissing an indictment on sixth amendment speedy trial grounds. On May 16, 1986, having found that Loud Hawk was "factually and logically distinguishable" from the present case, the court affirmed its earlier order.[6] This appeal followed.II. DISCUSSION.
 
 
 21
 The Government's arguments on appeal are two-fold. First, the Government argues that it had no duty to seek extradition of Pomeroy because the Canadian treaty, in combination with the Canadian Extradition Act, precluded the United States from obtaining Pomeroy. Alternatively, even if it failed in its duty to seek Pomeroy's extradition, the Government argues that the district court erred in dismissing the indictment because it incorrectly gave dispositive weight to the Government's breach of its perceived duty to seek Pomeroy's extradition. Based on the applicable law and the facts of this case, we cannot agree with either of the Government's contentions.
 
 
 22
 A. Government Obligation to Seek Pomeroy's Extradition.
 
 
 23
 It is well-settled that "the legal right to demand [a fugitive's] extradition and the correlative duty to surrender [that person] to the demanding country exist only when created by treaty." Factor v. Laubenheimer, 290 U.S. 276, 287, 54 S.Ct. 191, 193, 78 L.Ed. 315 (1933) (citations omitted). Therefore, to determine the nature and extent of this right we must examine the treaty creating the right.
 
 
 24
 Canada and the United States have an extradition treaty in force which specifically applies to the offense of robbery. Extradition Treaty, Dec. 3, 1971, United States-Canada, Schedule of Offenses, 27 U.S.T. 983, T.I.A.S. No. 8237. Although the Government claims that this treaty, as amplified by the Canadian Extradition Act, prohibited Pomeroy's extradition, we believe that this claim lacks merit.[7]
 
 
 25
 Although under Article 7 of the treaty, Canadian officials admittedly had the discretion to deny Pomeroy's surrender, there is nothing in the record to indicate they would have done so had a proper request been made by the Government. Under analogous circumstances, when such an attempt would not have been futile, courts have held that the government had "a constitutional duty to make a diligent, good-faith effort to bring [the fugitive] before the [district] court for trial." United States v. McConahy, 505 F.2d 770, 773 (7th Cir.1974) (citing Smith v. Hooey, 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed.2d 607 (1969)); accord United States v. Raffone, 405 F.Supp. 549, 550 (S.D.Fla.1975); see also United States v. Rowbotham, 430 F.Supp. 1254, 1257 (D.Mass.1977) (duty to obtain fugitive was one factor court looked at in dismissing indictment under Fed.R.Crim.P. 48(b)); compare United States v. Hooker, 607 F.2d 286, 289 (9th Cir.1979) (no duty to obtain fugitive where offense was not extraditable under existing treaty), cert. denied, 445 U.S. 905, 100 S.Ct. 1083, 63 L.Ed.2d 321 (1980). Under the facts of this case, we see no reason to depart from this rule.
 
 
 26
 B. Analysis Under the Barker Factors.
 
 
 27
 The district court analyzed in detail the facts of this case under the four Barker factors. Although no one factor is "either a necessary or sufficient condition to the finding of a deprivation of the right of a speedy trial," Barker, 407 U.S. at 533, 92 S.Ct. at 2193, the district court found that each of the factors weighed in favor of dismissal. We have carefully examined the court's opinion and have found no basis in either law or fact that would necessitate a reversal. Moreover, we agree with the court's analysis of Loud Hawk and its conclusion that Loud Hawk is distinguishable from the present case.
 
 
 28
 III. CONCLUSION.
 
 
 29
 Because the government failed in its duty to seek Pomeroy's extradition, and because the district court did not abuse its discretion in holding that the four-prong test in Barker rested in favor of dismissing the indictment against Pomeroy, we affirm the district court's order on the basis of its well-reasoned opinions.
 
 
 
 [1]
 The Honorable Patrick A. Conmy, Chief Judge, United States District Court for the District of North Dakota, Southwestern Division
 
 
 [2]
 Pomeroy was incarcerated in Canada for almost 3 1/2 years before his release
 
 
 [3]
 The Government argued that the Speedy Trial Act does not apply until a defendant has made an appearance before a judicial officer. Although not cited in the district court's opinion, the Government apparently relied on 18 U.S.C. Sec. 3161(c)(1), which provides that the trial of a defendant charged in an indictment shall commence within seventy days from the filing date of the indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date is last. See 18 U.S.C. Sec. 3161(c)(1)
 The district court "generally agree[d]" with the Government's position, but also noted that the Speedy Trial Act "seems to recognize that the government has some obligation to promptly attempt the extradition of an accused." See 18 U.S.C. Sec. 3161(j)(2), (3) (where the accused is imprisoned and causes notice to be sent to the government demanding trial, the government must promptly seek to obtain the prisoner's presence for trial). However, because both parties agreed that the sixth amendment applied, the court declined to discuss the Act in any further detail.
 
 
 [4]
 The court discussed in detail the four factors set out in Barker: (1) the length of delay; (2) the reason for delay; (3) whether the defendant has asserted his rights; and (4) the prejudice to the defendant resulting from the delay. Barker, 407 U.S. at 530, 92 S.Ct. at 2191 (1969). In determining that each factor weighed in favor of dismissing the indictment, the district court found: (1) Pomeroy's whereabouts were known for approximately two years, and nothing was done in the period to extradite him; (2) although Pomeroy was probably to blame for his incarceration in Canada, the fault in failing to extradite him lay with the United States; (3) Pomeroy asserted his rights in early April 1984; and (4) the district court cited Smith v. Hooey, 393 U.S. 374, 378-79, 89 S.Ct. 574, 577, 21 L.Ed.2d 207 (1969), for the proposition that prejudice can be presumed whenever a defendant is incarcerated for any significant period of time
 
 
 [5]
 In support of this proposition, the court cited Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 574, 21 L.Ed.2d 207 (1969); United States v. Hooker, 607 F.2d 286 (9th Cir.1979), cert. denied, 445 U.S. 905, 100 S.Ct. 1083, 63 L.Ed.2d 321 (1980); United States v. McConahy, 505 F.2d 770 (7th Cir.1974); United States v. Rowbotham, 430 F.Supp. 1254 (D.Mass.1977); United States v. Raffone, 405 F.Supp. 549 (S.D.Fla.1975)
 
 
 [6]
 The district court interpreted Loud Hawk as holding that "[i]n the absence of other factors weighing in favor of the defendants, where the reason for delay is meritorious, the passage of time will be tolled for speedy trial purposes." In Loud Hawk, the Supreme Court addressed whether the delays occasioned by interlocutory appeals were properly weighed in assessing the respondents' speedy trial claims. The Court found that the first, third and fourth factors in Barker presented little difficulty, Loud Hawk, 106 S.Ct. at 655-56, and thus focused on the reason for the delays. The Court ultimately held that because the respondents' position in their interlocutory appeals was meritless, "the time consumed by this appeal should not weigh in support of [their] speedy trial claim." Id. at 657. Thus, "on the facts before [them]," the Court felt that the delays asserted by the respondents did not justify "the severe remedy of dismissing the indictment." Id
 The district court distinguished Loud Hawk as involving interlocutory appeals concerning the prosecution at hand and meritless grounds for appeal by the respondents. Additionally, the sole factor in dispute was the reason for the delays, which weighed against the respondents.
 In contrast, the court noted that this case involved appeal of a conviction in a totally separate and unrelated criminal proceeding, and that Pomeroy's appeal of this conviction was not meritless; rather, it resulted in a reversal and a new trial. Moreover, the court noted that not one, but all of the Barker factors weighed in favor of dismissing the indictment against Pomeroy. Thus, the court concluded that Loud Hawk was distinguishable from the present case, and that under the reasoning of its earlier order, the dismissal should stand.
 
 
 [7]
 Section 3 of the Canadian Extradition Act provides that "no provision of this Part that is inconsistent with any of the terms of the [extradition treaty] has effect to contravene the [treaty] * * *." Extradition Act, Can.Rev.Stat. ch. 322, Part I, Sec. 3 (1952). Canadian courts have held that where there is an inconsistency between an extradition treaty and the Extradition Act, section 3 of the Act requires that the treaty prevail. E.g., Government of the Republic of Italy, 1 S.C.R. 320, 134 D.L.R. (3d) 53, 66 C.C.C. (2d) 1, 4-5 (Can.1982); accord Re Watson and the United States of America, F.C., 57 C.C.C. (2d) 217, 218-19 (Fed.Ct.1980); Re Nixon and the Queen, 44 O.R. (2d) 769, 10 C.C.C. (3d) 376, 381-83 (Ontario App.Ct.1984)
 The United States-Canada Extradition Treaty contains no provision that would have required Canadian officials to deny a request for Pomeroy's extradition. In fact, the only treaty article bearing on this question gives the Canadian authorities the discretion to either honor or deny such a request:
 When the person whose extradition is requested is being proceeded against or is serving a sentence in the territory of the requested State for an offense other than that for which extradition has been requested, his surrender may be deferred until the conclusion of the proceedings and the full execution of any punishment he may be or may have been awarded.
 Extradition Treaty, Art. 7, 27 U.S.T. at 989 (emphasis added).
 The Extradition Act, however, provides:
 A fugitive who has been accused of an offense within Canadian jurisdiction, not being the offense for which his surrender is asked, or who is undergoing sentence under a conviction in Canada, shall not be surrendered until after he has been discharged, whether by acquittal or by expiration of his sentence, or otherwise.
 Extradition Act, Can.Rev.Stat. ch. 322, Part I, Sec. 24 (emphasis added).
 The Government has not cited to this court any Canadian cases which have held that Article 7 of the Treaty is either consistent or inconsistent with section 24 of the Act, and our research indicates that none exists. We believe, however, that the two provisions are clearly inconsistent, and therefore, that section 3 of the Act requires the terms of the Extradition Treaty to prevail. Because Article 7 of the Treaty governs, it was always within the Canadian officials' discretion to grant a request for Pomeroy's extradition, despite the fact that he was being held on a Canadian charge. Thus, such a request would not necessarily have been inefficacious.