**Matthew Thomas CLARKE, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–94–250–CR.**

Court of Appeals of Texas,
Fort Worth.

Aug. 8, 1996.

Rehearing Overruled Sept. 19, 1996.

Matthew Thomas Clarke, pro se, Rosharon, H.F. Rick Hagen, Jackson & Hagen, Denton, for appellant.

Bruce Isaacks, Criminal District Attorney; Kathleen A. Walsh, Lisa Decker, Assistant District Attorneys, Denton, for appellee.

Before DAY, LIVINGSTON and HOLMAN, JJ.

## OPINION ON REHEARING

DAY, Justice.

### PROCEDURAL HISTORY AND APPELLATE REVIEW

We handed down this opinion on February 29, 1996 and published only those portions of the opinion addressing the speedy trial and venue points of error. This opinion has raised concerns about the proper standard of review of a speedy trial claim. On March 18, 1996, Matthew Thomas Clarke filed his amended motion for rehearing in this case, which we grant. Our prior opinion is withdrawn and this opinion is substituted in its entirety.

A jury found Clarke guilty of aggravated sexual assault on April 6, 1988. Clarke appealed his conviction, and we found reversible error and remanded the case for a new trial on the punishment phase only. *Clarke v. State,* 785 S.W.2d 860 (Tex.App.—Fort Worth 1990), *aff'd,* 811 S.W.2d 99 (Tex.Crim. App.), *cert. denied,* 502 U.S. 946, 112 S.Ct. 390, 116 L.Ed.2d 340 (1991). In the second trial, the jury assessed punishment at 99 years' imprisonment. Clarke appeals this conviction in eight points of error. We affirm his conviction.

### SPEEDY TRIAL

In his first two points of error, Clarke argues that the State violated his right to a speedy trial because his punishment was tried two years and five months after the United States Supreme Court denied certiorari on his first case. The Sixth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, guarantees the right to a speedy trial. *Klopfer v. North Carolina,* 386 U.S. 213, 223–24, 87 S.Ct. 988, 993–94, 18 L.Ed.2d 1, 8 (1967). Although the Texas Constitution also guarantees the right to a speedy trial, Clarke complains only of the violation of his federal right. However, the test applied under either the state or federal constitution is the same. *Hull v. State,* 699 S.W.2d 220, 221 (Tex.Crim.App.1985); *Russell v. State,* 598 S.W.2d 238, 248 (Tex.Crim. App.), *cert. denied,* 449 U.S. 1003, 101 S.Ct. 544, 66 L.Ed.2d 300 (1980). To determine whether an accused has been denied the right to a speedy trial, the trial court employs the balancing test first enunciated in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 116–17 (1972).

### Standard of Review

In Clarke's amended motion for rehearing, he argues that this court incorrectly

applied an abuse of discretion standard in reviewing a trial court's analysis of a speedy trial claim under *Barker v. Wingo,* citing *Emery v. State,* 881 S.W.2d 702, 708 (Tex. Crim.App.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995) and *Phillips v. State,* 650 S.W.2d 396, 398 (Tex. Crim.App.1983). According to these two Court of Criminal Appeals opinions, intermediate courts should apply the *Barker v. Wingo* balancing test anew. While the language in these two opinions is subtle, we agree that Clarke is correct in determining that we must conduct the *Barker* balancing test de novo. In applying this test, we consider four factors: 1) length of delay; 2) reason for the delay; 3) defendant's assertion of the right; and 4) prejudice to the defendant resulting from that delay. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 116–17. To facilitate this analysis and to address some of Clarke's misstatements of our original opinion, we have compiled the following time line:

March 1987 Clarke commits this aggravated sexual assault.

April 6, 1988 A jury convicts Clarke and assesses punishment at 99 years.

April 29, 1988 Clarke files notice of appeal on this offense.

August 25, 1989 A jury convicts Clarke of first extraneous offense, the aggravated sexual assault of C.V.

January 24, 1990 A jury convicts Clarke of second extraneous offense, the aggravated sexual assault of D.L.

January 31, 1990 We reverse and remand for a new trial on punishment for this aggravated assault.

May 25, 1990 Clarke files petition for discretionary review for this offense.

September 12, 1990 Court of Criminal Appeals grants PDR for this offense.

April 17, 1991 Court of Criminal Appeals affirms our opinion. 811 S.W.2d 99.

November 4, 1991 U.S. Supreme Court denies certiorari. 502 U.S. 946, 112 S.Ct. 390, 116 L.Ed.2d 340.

June 29, 1992 Conviction for first extraneous offense becomes final.

November 6, 1992 Conviction for second extraneous offense becomes final.

November 17, 1993 Clarke files motion for speedy retrial for this offense. He also files his first motion for a pretrial hearing for his more than 32 outstanding motions.

January 24, 1994 A bench warrant indicates that trial was set for this date. No record of why passed.

March 1, 1994 Clarke files first motion to dismiss for failure to provide a speedy retrial.

March 15, 1994 Trial court calls the case and sets a pretrial hearing for March 29, 1994.

March 16, 1994 A second bench warrant indicates that trial was set for this date.

March 17, 1994 Clarke files a supplemental motion for a pretrial hearing.

March 24, 1994 Clarke files second motion to dismiss for failure to provide a speedy retrial.

March 29, 1994 Pretrial hearing begins.

April 8, 1994 Pretrial hearing continues.

April 11, 1994 Pretrial hearing continues.

April 18, 1994 Retrial on punishment held and jury assesses punishment at 99 years.

June 8, 1994 Clarke files notice of appeal.

### *Barker* Analysis
#### *Length of Delay*

■ First, we must measure the length of delay. Although no specific length of time triggers a speedy trial analysis, the Court of Criminal Appeals notes that some courts presume that a delay of eight months or longer is prejudicial. *See Harris v. State,* 827 S.W.2d 949, 956 (Tex.Crim.App.), *cert. denied,* 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992). In other cases, delays of three to four years have been upheld.[1] *See Phipps v. State,* 630 S.W.2d 942, 946 (Tex. Crim.App. [Panel Op.] 1982); *Swisher v. State,* 544 S.W.2d 379, 381 (Tex.Crim.App. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977). The U.S. Su-

---

1. Since the Court of Criminal Appeals overturned the Texas Speedy Trial Act, *Meshell v. State,* 739 S.W.2d 246 (Tex.Crim.App.1987), no specific time guidelines have been adopted.

preme Court denied Clarke's petition for certiorari on November 4, 1991, and he was retried on April 11, 1994. Because the State concedes that this 29 month delay triggers a speedy trial analysis, we must next consider the reason for the delay.

### Reason for the Delay

■ Once a court determines that the length of the delay triggers a speedy trial analysis or the State concedes the issue, it is the State's burden to excuse this delay. *See Phillips v. State*, 650 S.W.2d at 400; *Turner v. State*, 545 S.W.2d 133, 137–38 (Tex.Crim. App.1976). In the hearing on the speedy trial motion, the State presented only one witness, an employee of the Denton County Sheriff's Department. The employee testified that the Denton County jail was overcrowded in the two years before Clarke's retrial and that because of the overcrowding, the jail did not have a "special cell" that Clarke supposedly required when he returned to Denton for retrial. She also testified that Clarke required a large amount of space in the property room for his legal materials. However, overcrowded conditions in a county jail do not justify a two-and-a-half-year delay in bringing a case for trial. The State concedes that the record reveals no other excuse for the delay. In light of a silent record, we must presume that no valid reason existed for the delay. *Phillips*, 650 S.W.2d at 400. Accordingly, the State did not meet its burden in excusing the delay, and the delay weighs against the State.

### Assertion of the Right

■ However, closely tied to the second *Barker* factor is the defendant's assertion of his right to a speedy trial. Assertion of the right is entitled to strong evidentiary weight. *Barker*, 407 U.S. at 531–32, 92 S.Ct. at 2192–93, 33 L.Ed.2d at 117–18. A lengthy delay in

asserting the right makes it difficult to prove denial of a speedy trial and tends to diminish the importance of the State's inability to excuse the delay. *See County v. State*, 668 S.W.2d 708, 712 (Tex.Crim.App.1984), *overruled on other grounds by Holladay v. State*, 709 S.W.2d 194, 195 (Tex.Crim.App.1986). Clarke filed a motion for a speedy trial on November 17, 1993, **two years** after the U.S. Supreme Court denied certiorari. Our original opinion correctly stated that Clarke filed his first motion for a speedy retrial on November 17, 1993. Our original opinion did not say that Clarke never asserted his right, as he incorrectly states in his motion for rehearing. He filed his first motion to dismiss for failure to provide a speedy trial on March 1, 1994 and his second on March 24, 1994. The trial court denied both motions.

■ A defendant's motivation in asking for a dismissal rather than a prompt trial may attenuate the strength of the claim. *Phillips*, 650 S.W.2d at 401; *Orosco v. State*, 827 S.W.2d 575, 577 (Tex.App.—Fort Worth 1992, pet. ref'd), *cert. denied*, 506 U.S. 960, 113 S.Ct. 425, 121 L.Ed.2d 347 (1992). In *Orosco*, the defendant did not request a speedy trial until two years after his indictment. Then, he did not pursue the request, but instead moved for dismissal of the indictment. This diminished the strength of his claim. *Orosco*, 827 S.W.2d at 577. Similarly, Clarke did not pursue his motion for a speedy trial, but moved for dismissal. He set his motions for dismissal for hearing immediately before trial. Further, Clarke's assertion of the right must be viewed in light of his other conduct. *See Burgett v. State*, 865 S.W.2d 594, 598 (Tex.App.—Fort Worth 1993, pet. ref'd.). Because Clarke filed his motion for a speedy trial on the same day he filed 32 other motions,[2] the judge may have believed his assertion was weak.

---

**2.** Some of the other motions that Clarke filed on November 17, 1993 included a motion to record all proceedings; motion to suppress evidence; second motion to suppress evidence; motion for discovery and inspection; motion for funding of expert for expert testimony; motion for appointment of investigator; motion for leave to file additional and/or amended motions; motion to suppress in-court and out-of-court identification; motion in limine to prohibit proof of extraneous

offenses that are not finally adjudicated; motion to restrict State's argument; motion for production of witnesses' statements; motion to reveal evidence of extraneous offenses; motion to allow a reasonable period in which to conduct voir dire; motion to limit prosecution questioning of defendant during suppression hearings; motion that the court instruct each prosecutor's witness to refrain from answering the prosecutor's question when the defendant rises, verbally states an

Clarke also argues that his retrial should have taken priority on the court's docket. This argument relates to the defendant's assertion of the right to a speedy trial. In support of his contention, Clarke cites the Code of Criminal Procedure articles 32A.01 and 32A.02, Texas Government Code section 23.101, and Rule 7.4 of the Uniform Rules for the District and Statutory County Courts of Denton County.

Article 32A.01 of the Texas Code of Criminal Procedure states:

Insofar as practicable, the trial of a criminal action shall be given preference over trials of civil cases, and the trial of a criminal action against a defendant who is detained in jail pending trial of the action shall be given preference over trials of other criminal actions.

TEX. CODE CRIM. PROC. ANN. art. 32A.01 (Vernon 1989). Article 32A.02 of the Texas Code of Criminal Procedure provided a 180 day limit for the State to announce ready for trial in a felony prosecution. However, in 1987, the Court of Criminal Appeals held that article 32A.02 was unconstitutional. *Meshell v. State*, 739 S.W.2d 246, 257 (Tex.Crim.App. 1987). Article 32A.02 is thus inapplicable to this case.

The version of Texas Government Code section 23.101 in effect in April 1994, when this case was retried, states:

(a) The trial courts of this state shall ... set hearings and trials of pending matters, giving preference to hearings and trials of the following:

. . . .

(2) criminal actions, with criminal actions against defendants who are detained in jail pending trial given preference over other criminal actions.... [3]

Despite the mandatory language of subsection (a), subsection (b) states:

Insofar as practicable, the trial courts shall observe the preference provided by Sub-

section (a) in ruling on, hearing, and trying the matters pending before the courts.

*Id.* § 23.101(b) (Vernon 1988). We note that the language "insofar as practicable" in both article 32A.01 of the Texas Code of Criminal Procedure and section 23.101 of the Government Code dictates that we give deference to the trial court's docket control.

Lastly, rule 7 of the Denton County Local Rules is entitled "Speedy Disposition of Criminal Cases." It states:

The trial preference for docketed cases shall be as follows:

Cases in which:

a. The defendant is incarcerated in the Denton County jail.

b. Cases set preferentially by the court.

c. A child is the victim.

d. A crime of violence is alleged.

All other cases will be tried in order of their age. The oldest cases shall be tried first.

DENTON (TEX.) LOC. R. 7.4.

These statutes and local rule give additional support to Clarke's right to assert his speedy trial claim, but do not waive his duty to assert and pursue the right. Because Clarke delayed in asserting his right for over two years, filed his motion with thirty-two others, failed to separately set it for hearing, and pursued a dismissal rather than an accelerated trial setting, we cannot say that he timely asserted his right. The third *Barker* factor weighs against him.

### *Prejudice Caused by the Delay*

The fourth *Barker* factor that the trial court must consider is prejudice to the defendant caused by the delay. Trial delay can be harmful in three ways: 1) the pretrial incarceration may be oppressive; 2) the accused may be unduly subjected to anxiety and concern; or 3) the accused's defense may be impaired. *Barker*, 407 U.S. at 532, 92

---

objection, or both; motion to restrict the State from rehearsing, refreshing the memory of, and questioning State's witnesses in the presence of other State's witnesses; and motion to limit jury argument of the State.

3. Act of May 21, 1991, 72nd Leg., R.S., ch. 465, § 4, 1991 Tex. Gen. Laws 1686, 1688 (current version at TEX. GOV'T CODE ANN. § 23.101(a) (Vernon Supp.1996)).

S.Ct. at 2193, 33 L.Ed.2d at 117–18. It is the defendant's burden to make a prima facie showing of prejudice. Once the defendant does so, it is the State's "obligation of proving that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Ex parte McKenzie,* 491 S.W.2d 122, 123 (Tex.Crim. App.1973).

Clarke claims the delay impaired his defense because: 1) he was unable to locate four witnesses for the retrial; 2) convictions for two extraneous offenses became final during the delay and thus became admissible at trial; and 3) once the extraneous offenses became final, the range of punishment for which he was eligible no longer included probation. Clarke claims his pretrial incarceration was oppressive because: 1) his pending case precluded him from certain rehabilitation programs, job classifications, and trusty levels in the Texas Department of Criminal Justice; and 2) he was unable to appeal or to file a writ of habeas corpus during the pendency of this case. Lastly, he also claims that he was subjected to undue anxiety and concern while awaiting his retrial.

 We address the claims of prejudice due to an impaired defense first. Clarke claims he was unable to locate four classmates to testify as character witnesses in the retrial because of the delay. To claim prejudice because of a missing witness, Clarke must have shown that: 1) the witnesses were unavailable at the time of the retrial; 2) their testimony would have been relevant and material; and 3) he exercised due diligence in an attempt to locate the witnesses. *Burgett,* 865 S.W.2d at 598.

Clarke testified that he could not locate the four classmates. However, he did not testify what measures he had taken to ascertain their locations. Accordingly, Clarke did not make a prima facie showing of prejudice.

Clarke also argues that his defense was impaired because the convictions for two extraneous offenses became final during the delay after the Supreme Court denied certiorari on November 4, 1991. Under the version of Texas Code of Criminal Procedure article 37.07(3)(a) applicable to this case,[4] evidence of an extraneous offense is inadmissible unless it is a final conviction. Clarke claims that his extraneous offenses became final on September 16, 1992 and March 22, 1993.[5] The State argues that this court has already determined that evidence of Clarke's extraneous offenses is admissible. *See Clarke,* 785 S.W.2d at 866. However, our holding allowed evidence of the extraneous offenses to be admitted to establish identity in the guilt or innocence phase of trial only. *Id.* This holding is inapplicable to a retrial of the punishment phase.

The State also cites an unpublished opinion by this court, although unpublished opinions are not to be cited as authority. Tex. R. App. P. 90(i). That opinion discusses a version of Texas Code of Criminal Procedure article 37.07 not in effect at the time of Clarke's offense. Thus, this argument has no merit. Lastly, the State directs our attention to one of the latest versions of article 37.07(3)(a),[6] which allows evidence of extraneous offenses even if those offenses have not been finally adjudicated. Again, the only relevant version of article 37.07(3)(a) is the one in effect in March 1987, the date that Clarke committed this offense.[7]

---

4. The version of 37.07(3)(a) in effect at the time of the offense read:

> Regardless of the plea and whether punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged.

Act of May 27, 1985, 69th Leg., R.S., ch. 685, § 8(b), 1985 Tex. Gen. Laws 2472, 2473.

5. The Court of Criminal Appeals actually issued mandates for the two extraneous offenses on June 29, 1992 and November 6, 1992, respectively.

6. Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 5.05, 1993 Tex. Gen. Laws 3586, 3759 (current version at Tex. Code Crim. Proc. Ann. art. 37.07(3)(a) (Vernon Supp.1996)).

7. *See supra* note 4.

■ At the retrial on the punishment phase, the trial court admitted the convictions and lengths of sentences of the extraneous offenses into evidence. The jury, in its deliberations, asked the court if the sentence it assessed would run concurrently with Clarke's other sentences. This shows that the jury considered the convictions in Clarke's extraneous offenses when assessing punishment for this offense. The prejudice of which Clarke complained in his motion to dismiss was thus realized at trial. The State suggested to the trial court that this prejudice was a risk Clarke bore when he appealed his first conviction in this case. We can find no case law that suggests a defendant may assume the risk of prejudice because he avails himself of the appellate process.

However, we find it compelling that Clarke failed to request a speedy trial until over a year after the second extraneous offense became final and over two years after his writ for certiorari was denied on November 4, 1991. This tends to show that Clarke was not too concerned with the extraneous offenses becoming final and that he actually helped cause the prejudice of which he now complains. Because Clarke contributed to the prejudice of his extraneous offenses becoming final convictions before his retrial on punishment, we cannot attribute this prejudice to the State entirely. This prejudice weighs equally against Clarke and the State.

Clarke also claims that because the extraneous convictions became final before his retrial on punishment, he became ineligible for probation for this offense. This is a consequence of the extraneous offenses becoming final. As we have already discussed, Clarke's failure to request a speedy retrial for over one year after the second extraneous offense became final helped cause any prejudice connected with the finality of the extraneous offenses. That Clarke was no longer eligible for probation in his retrial on punishment does not weigh against the State.

■ Next, Clarke argues that his pretrial incarceration was oppressive. First, he states that this pending retrial on punishment precluded him from certain rehabilitation programs, job classifications, and trusty levels in the Texas Department of Criminal

Justice. However, the State rebutted this showing of prejudice by proving that a burglary of a habitation charge was pending against Clarke at the time of the retrial on punishment. He would be ineligible for the programs, job classifications, and trusty levels because of this pending burglary charge.

■ Clarke argues that his incarceration was oppressive because he could not appeal to this court or the Court of Criminal Appeals or file a writ of habeas corpus until the State retried his punishment. He contends that "justice delayed is justice denied." However, he has provided no legal authority that says a delay in appealing a case is prejudicial. We find that this argument is without merit.

■ Lastly, Clarke states that he experienced anxiety, sleeplessness, depression, and frustration because of the delay in retrying the punishment of this case. The State rebutted this prejudice by arguing that Clarke experienced those problems because he is serving seventy-five year and ninety-nine year sentences for the two extraneous offenses.

■ Clarke also asks us to consider a presumptive prejudice that grows in importance as the length of the delay before trial increases. *Doggett v. United States,* 505 U.S. 647, 656, 112 S.Ct. 2686, 2693, 120 L.Ed.2d 520, 531 (1992). However, the Supreme Court stated in *Doggett* that "such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria." *Id.* To warrant granting relief, presumptive prejudice must have been caused by a long period of negligence in bringing the case to trial by the State. *Id.* at 654, 112 S.Ct. at 2694, 120 L.Ed.2d at 532. Here, the delay in bringing Clarke to retrial on punishment was two years and five months after the Supreme Court denied certiorari on November 4, 1991, but was only five months after his motion for speedy retrial. Although the time lapse triggers a speedy trial analysis in this case, it is not long enough for Clarke to have suffered from *Doggett* prejudice that requires relief.

Thus, the State rebutted all of Clarke's claims of prejudice except for that caused by the admission of the extraneous offenses after they became final convictions. However, Clarke's delay in asserting the right to a speedy trial until a year after the extraneous offenses were both final contributed greatly to the impairment of his defense. Thus, the fourth *Barker* factor weighs against neither Clarke nor the State.

Thus, we face a situation where two factors weigh against the State: length of delay and reason for the delay. One factor, prejudice to Clarke, weighs against neither the State nor Clarke. One factor, assertion of the right, weighs heavily against the defendant. When the failure to assert the right is made so late and never heard until trial, it weakens all the other factors because they are so dependant upon the assertion. The delay in asserting the right is tantamount to a waiver of the right to a speedy trial.[8] Because we find that Clarke's failure to timely assert the right to a speedy trial weighs so heavily against him, it was not error for the trial court to deny his speedy trial claim. We overrule points of error one and two.

### VENUE

In point of error five, Clarke claims that he should have been granted a change of venue as a matter of law because the State failed to timely file its controverting affidavits. Clarke filed a motion for change of venue properly supported by affidavits on March 1, 1994, stating that a fair trial could not be had in Denton County because extensive newspaper coverage of his cases created prejudice against him. On March 15, 1994, the trial court called the case, and Clarke asked the judge if they could hold a pretrial hearing to hear his motions. The court agreed. Clarke followed up his oral request with a supplemental motion for a pretrial hearing in which he specifically asked that his motion for change of venue be heard. He

filed this motion on March 17, 1994. The trial court signed an order granting the supplemental motion for a pretrial hearing on March 29, 1994, the day when the pretrial hearing actually began. The State did not file its controverting affidavits until that date.

Article 31.04 of the Texas Code of Criminal Procedure states that a motion for change of venue may be controverted by the affidavit of a credible person. TEX. CODE CRIM. PROC. ANN. art. 31.04 (Vernon 1989). Although the article does not specify that the State must file controverting affidavits, "a hundred years of precedents" have held that until this is done, there is no issue between the parties to argue at a hearing. *Lundstrom v. State*, 742 S.W.2d 279, 283 (Tex. Crim.App.1986). If the State files no controverting affidavits, the defendant is entitled to a change of venue as a matter of law. *Id.*

The issue in this case is whether the State's controverting affidavits were timely filed so that the trial court could consider the affidavits and reach the merits of the requested change of venue. In analyzing this issue, we are asked to construe article 31.04 in conjunction with article 28.01 of the Texas Code of Criminal Procedure. Article 28.01 provides:

The court may set any criminal case for a pre-trial hearing before it is set for trial upon its merits, and direct the defendant and his attorney, if any of record, and the State's attorney, to appear before the court at the time and place stated in the court's order for a conference and hearing.... The pre-trial hearing shall be to determine any of the following matters:

. . . .

(7) Motions for change of venue by the State or the defendant; provided, however, that such motions for change of venue, if overruled at the pre-trial hearing, may be renewed by the State or the defendant during the voir dire examination of the jury....

---

8. Being "tantamount to a waiver" is not the same as "waiver," as asserted by Clarke in point two of his motion for rehearing. Although the right to a speedy trial cannot actually be waived, *Phillips v. State*, 650 S.W.2d at 400; *Tatum v.*

*State*, 505 S.W.2d 548, 550 (Tex.Crim.App.1974), the failure to timely assert the right can greatly affect the importance of factors that may weigh in the defendant's favor.

TEX. CODE CRIM. PROC. ANN. art. 28.01, § 1 (Vernon 1989). Article 28.01 further says that "[w]hen a criminal case is set for such pre-trial hearing, any such preliminary matters not raised or filed seven days before the hearing will not thereafter be allowed to be raised or filed, except by permission of the court for good cause shown...." *Id.* § 2. The question we must answer is whether the State must file its controverting affidavits seven days before the pretrial hearing in which the motion for change of venue is to be heard.

Although the court began the pretrial hearing on March 29, 1994, it could not hear all of the motions on that day. The court continued the hearing on April 8, 1994 and April 11, 1994. The court finally reached the motion for change of venue on April 11, 1994, but Clarke objected to having such a hearing because of the alleged untimeliness of the State's affidavits. The motion was then continued until April 18, 1994, the day the trial began. The State claims that for purposes of filing its controverting affidavits, time is counted from the date that the motion is actually argued, regardless of when the pretrial hearing actually began. The State's contention is that each date that motions were argued is a separate pretrial hearing, but the State cites no authority for this contention. However, if time were counted in such a way, the seven day time limit in section 2 of article 28.01 would be practically impossible to enforce. Unless the date that each motion was to be argued was clearly delineated, there would be no way to know when preliminary matters must be raised or filed.

We are guided by no precedent directly on this issue. In *James v. State*, the court stated, without further explanation, that "[t]he State controverted appellant's motion in a timely manner, raising a factual issue and the need for a hearing." *James v. State*, 772 S.W.2d 84, 93 (Tex.Crim.App.1989) (op. on reh'g), *vacated on other grounds*, 493 U.S. 885, 110 S.Ct. 225, 107 L.Ed.2d 178 (1989) (emphasis added). In *Cooks v. State*, the court did not reach "the issue of whether the State's affidavits were timely filed, [because] appellant waived his right to a change of venue as a matter of law by participating in

hearings on the merits of the motion." *Cooks v. State*, 844 S.W.2d 697, 730 (Tex. Crim.App.1992), *cert. denied*, 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993) (emphasis added). In *Cooks*, the State had not filed its controverting affidavits before the pretrial hearing began on June 8, 1988 before a visiting judge. With the visiting judge's permission, the State filed its controverting affidavits after the pretrial hearing began. When the presiding judge returned, the parties held three subsequent hearings on the merits of the motion for change of venue. *Id.* In contrast, Clarke refused to argue the merits of his motion and asserted that he was entitled to a change of venue as a matter of law. Thus, this is an issue of first impression.

■ In interpreting a statute, we first look to its plain meaning. Only if the meaning is not clear and unambiguous do we resort to the rules of construction. *One 1985 Chevrolet v. State*, 852 S.W.2d 932, 935 (Tex. 1993); *State v. Eversole*, 889 S.W.2d 418, 421–22 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd). We find that article 28.01 is clear and unambiguous. Section 2 of article 28.01 states that preliminary matters must be "raised or filed" seven days before the pretrial hearing. TEX. CODE CRIM. PROC. ANN. art. 28.01 § 2 (Vernon 1989). Here, Clarke was the movant, and his motion for change of venue, filed more than seven days before the pretrial hearing, raised the issue of whether Clarke could obtain a fair trial in Denton. This is consistent with other case law in which a movant that failed to raise or file a preliminary matter waived that matter. *See Postell v. State*, 693 S.W.2d 462, 464 (Tex. Crim.App.1985) (jury election); *Saenz v. State*, 840 S.W.2d 96, 99 (Tex.App.—El Paso 1992, pet. ref'd) (motion to suppress); *Hendricks v. State*, 727 S.W.2d 816, 818 (Tex. App.—Fort Worth 1987, no pet.) (motion to quash indictment). Thus, the State's controverting affidavits were merely a response to a preliminary matter already "raised or filed." They are, in actuality, the evidence that the State intends to present on the matter.

Because it was Clarke's motion, it was his duty to have the motion heard if and when the State controverted his supporting affidavits. The preliminary matter was "raised or filed" by Clarke more than seven days before any hearing on any pretrial matter. To require the State to file controverting affidavits at least seven days before a hearing that the opposing counsel will be setting could rise to the level of absurdity. If, for any reason, upon review of the controverting affidavits, the accused requires additional time to prepare for the hearing, a continuance would be the appropriate remedy. Further, because article 28.01, section 1(7) itself allows the parties to reurge a motion for change of venue during voir dire, the timing of filing of the controverting affidavits is somewhat irrelevant. Accordingly, we hold that the filing of controverting affidavits in response to a motion for change of venue is not subject to the seven day time limitation of article 28.01. Point of error five is overruled.

## DOUBLE JEOPARDY

In points of error three and four, Clarke argues that the trial court erred in denying his motion to suppress evidence of convictions in his two extraneous offenses and in admitting the convictions into evidence. The convictions were for two aggravated sexual assaults. Clarke claims that the convictions were reached in violation of the double jeopardy clause of the U.S. Constitution because jeopardy for the two extraneous offenses attached during the guilt-innocence phase and the first punishment phase of the trial for this offense. U.S. Const. amend. V. If the convictions for the extraneous offenses were constitutionally invalid, they could not be considered at resentencing for this offense.

This argument is a collateral attack on the validity of Clarke's convictions in the two extraneous offenses. *See Ex parte Elizalde*, 594 S.W.2d 105, 106 (Tex.Crim.App. 1980) (op. on reh'g). Because it is the appellant's burden to prove that the convictions are void in a collateral attack, *Acosta v. State*, 650 S.W.2d 827, 829 (Tex.Crim.App. 1983), Clarke must prove that the convictions for the extraneous offenses violate the double

jeopardy clause. The double jeopardy clause protects against: 1) a second prosecution for the same offense after acquittal; 2) a second prosecution for the same offense after conviction; and 3) multiple punishments for the same offense. *Ex parte Broxton*, 888 S.W.2d 23, 25 (Tex.Crim.App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2584, 132 L.Ed.2d 833 (1995). Clarke's contention falls into the third category: he claims that he was first punished for the extraneous offenses in the original trial of this offense because of comments the prosecutor made to the jury during the guilt-innocence and punishment phases of trial.

In the guilt-innocence phase of the trial for this offense, the prosecutor argued to the jury:

What else did the defense not even touch during their closing argument? They didn't touch the event of May the 27th of 1987—didn't even touch the little stroll that Mr. Clarke was making down Londonderry with his twine and his knife and his cap and his mask stuffed down his pants—didn't even touch it. Why not? Because there is no explanation for it. The only explanation for it, is what you already know, here's a man dressed totally in black, just like he was when he went to [D.L.'s] four nights earlier with the same mask, knife, cap, twine, ladies and gentlemen. If it hadn't been for the actions of the Denton Police Department, the same people that they label as buffoons, as incompetent, I submit to you it's a reasonable deduction from the evidence that we would have had to clear one more space on that bench—

In his appeal of the guilty verdict, Clarke argued that this was improper argument, but he failed to preserve error in the record about what "clear one more space on that bench" meant. *Clarke*, 785 S.W.2d at 871–72. Clarke has since created a record in the retrial of the punishment phase during his motion to suppress hearing that shows the prosecutor made the comment while pointing to the courtroom bench where the complainants in this offense and the two extraneous offenses sat. However, we find that Clarke may not revisit the guilt-innocence stage of

this trial to cure defects in the record. In collaterally attacking the validity of the extraneous offenses, Clarke is bound by the face of the record of the guilt-innocence phase of this trial to prove that jeopardy attached for the extraneous offenses. We have already held that there is no evidence in the record that the complainants were seated on the referred to bench. *Clarke,* 785 S.W.2d at 872. Accordingly, Clarke's collateral attack fails in this regard.[9]

 Clarke also argues that jeopardy attached for the extraneous offenses during the first punishment phase of trial for this offense when the prosecutor asked the jury to punish him based on this offense and the extraneous offenses. However, "[i]n order for there to be any double jeopardy bar to [a] second prosecution under the double jeopardy guarantee against multiple punishment, appellant has to have already been punished once." *Broxton,* 888 S.W.2d at 25. "An accused cannot successfully claim that he has already been punished for the same offense in a prior proceeding unless the judgment in the prior proceeding has become final." *Marr v. State,* 689 S.W.2d 290, 292 (Tex. App.—Waco 1985, pet. ref'd). This court reversed the punishment phase of the first trial, so Clarke was not punished for the extraneous offenses because of the prosecutor's remarks to the jury. Jeopardy for the extraneous offenses did not attach. Because Clarke did not prove his collateral attack on the convictions for the extraneous offenses, the trial court did not err in denying Clarke's motion to suppress and in allowing the convictions in evidence. We overrule points of error three and four.

### DISQUALIFICATION OF THE DISTRICT ATTORNEY'S OFFICE

In points of error six and seven, Clarke argues that the trial court erred in denying his motion and amended motion to disqualify the Denton County District Attorney's office from the case. Specifically, Clarke complains about a lawyer, Stacy Scofield, who worked at the District Attorney's Office from September 1988 to December 1988 and from April 1990 to February 1994. Before her employment with the District Attorney's Office, Ms. Scofield had worked on Clarke's case as a law clerk for her father, Bob Scofield, who was Clarke's attorney at that time. Because of Ms. Scofield's conflict of interest, Clarke asserts that the Texas Disciplinary Rules of Professional Conduct disqualify the entire District Attorney's Office from prosecuting his case.

Clarke claims that prosecution of his case by the District Attorney's Office violates Texas Disciplinary Rules of Professional Conduct 1.06(d) and (f), 1.09(b), and 1.10(e)(1). Rule 1.06 states:

(d) A lawyer who has represented multiple parties in a matter shall not thereafter represent any of such parties in a dispute among the parties arising out of the matter, unless prior consent is obtained from all such parties in the dispute.

. . . .

(f) If a lawyer would be prohibited by this Rule from engaging in particular conduct, no other lawyer while a member or associated with that lawyer's firm may engage in that conduct.

TEX. DISCIPLINARY R. PROF. CONDUCT 1.06(d) & (f) (1990), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp. 1996) (STATE BAR RULES art. X, § 9). Rule 1.09(a)–(b) states:

(a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

. . . .

(3) if it is the same or a substantially related matter.

(b) Except to the extent authorized by Rule 1.10, when lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing

---

9. Even if Clarke could cure the deficiencies in the record, we would find that he failed to prove that the jury in the guilt-innocence phase of trial for this offense found him guilty based upon the commission of the extraneous offenses.

alone would be prohibited from doing so by paragraph (a).

TEX. DISCIPLINARY R. PROF. CONDUCT 1.09(a)–(b) (1990). Rule 1.10(e)(1) states:

(e) Except as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not:

(1) Participate in a matter involving a private client when the lawyer had represented that client in the same matter while in private practice or nongovernmental employment, unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in the matter....

TEX. DISCIPLINARY R. PROF. CONDUCT 1.10(e)(1) (1990).

■ Despite recent civil cases that have disqualified attorneys or firms from representing a client due to conflicts of interests,[10] in criminal cases, "[a] trial court may not disqualify a district attorney or his staff on the basis of a conflict of interest that does not rise to the level of a due process violation." *State ex rel. Hill v. Pirtle,* 887 S.W.2d 921, 927 (Tex.Crim.App.1994) (orig. proceeding); *see also State ex rel. Eidson v. Edwards,* 793 S.W.2d 1, 6 (Tex.Crim.App.1990) (orig. proceeding).

■ Without addressing whether Stacy Scofield or any other prosecutors in the District Attorney's Office violated these Disciplinary Rules, we hold that the alleged conflict does not constitute a violation of Clarke's due process rights. Ms. Scofield testified that she did not discuss Clarke's case with any member of the District Attorney's Office. Further, she never helped to prosecute the case against Clarke, and she

did not work for the District Attorney when this case was first tried in April 1988 or during the retrial in April 1994. Accordingly, the trial court did not err in denying Clarke's motion and amended motion to disqualify the District Attorney's staff. Points of error six and seven are overruled.

## CHARGE TO THE JURY

■ In point of error eight, Clarke argues that the trial court erred in charging the jury on the parole laws in effect prior to September 1, 1987. He complains that such a charge is not permitted by law. The charge to the jury read:

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-third of the sentence imposed or 20 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than six years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

This language tracks the charge mandated by the current version of article 37.07, section 4(a) of the Texas Code of Criminal Procedure,[11] but substitutes the time-served requirements in effect in March 1987,[12] the date Clarke committed this aggravated sexual assault.

The version of article 37.07, section 4 of the Texas Code of Criminal Procedure in effect at the time of Clarke's offense was declared unconstitutional in 1988 by the Court of Criminal Appeals. *Rose v. State,*

---

10. *Henderson v. Floyd,* 891 S.W.2d 252 (Tex. 1995); *NCNB Texas Nat'l Bank v. Coker,* 765 S.W.2d 398 (Tex.1989).

11. Under the law applicable to this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (Vernon Supp.1996).

12. If a prisoner is serving a sentence for [aggravated sexual assault], he is not eligible for release on parole until his actual calendar time served, without consideration of good conduct time, equals one-third of the maximum sentence or 20 calendar years, whichever is less, but in no event shall he be eligible for release on parole in less than two calendar years. Act of May 21, 1985, 69th Leg., R.S., ch. 427, § 2, 1985 Tex. Gen. Laws 1531, 1551.

752 S.W.2d 529, 535 (Tex.Crim.App.1987) (op. on reh'g). On November 7, 1989, Texas voters approved an amendment to the Texas Constitution that gave the Legislature the authority to enact laws that require courts to inform juries about the effect of good conduct time and eligibility for parole on the period of incarceration served by a defendant. TEX. CONST. art. 4, § 11. The Legislature subsequently re-enacted article 37.07, section 4 in 1989, but the time-served requirements were changed to one-fourth of the sentence or fifteen years, whichever was less.[13] The·Legislature again changed article 37.07, section 4 in 1993 so that the time-served requirements are one-half the sentence or thirty years, whichever is less.[14] Clarke notes that the versions of article 37.07 that were enacted after the constitutional amendment never addressed the time-served requirements that apply to him, one-third of the sentence or twenty years, whichever is less. For this reason, Clarke believes that the charge was not authorized by any law and should not have been given.

However, the trial court must give the parole charge. *Grigsby v. State*, 833 S.W.2d 573, 576 (Tex.App.—Dallas 1992, pet. ref'd). Because article 37.07, section 4, affects procedural matters, not substantive rights, the article must be followed even though the crime occurred before the constitutional amendment. *See French v. State*, 830 S.W.2d 607, 608–09 (Tex.Crim.App.1992). The first phrase of the charge itself instructs the jury about the parole "[u]nder the law applicable in this case." Because the law requires the trial court to give the charge, and because the charge requires that the law applicable to the case be given, it was not error for the trial court to substitute the time-served · requirements applicable to Clarke's case into the charge. Point of error eight is overruled.

Having overruled all eight points of error, we affirm Clarke's conviction.

LIVINGSTON, J., files a concurring opinion.

LIVINGSTON, Justice, concurring.

I join in the opinion as to the result of the case, but differ with the majority about the standard of review to be used in a speedy trial analysis. As set forth in my original opinion, which is now withdrawn, I believe that an appellate court should review the trial court's application of the *Barker v. Wingo* balancing test to determine whether the trial court abused its discretion. *United States v. Sears, Roebuck & Co.*, 877 F.2d 734, 739 (9th Cir.1989); *United States v. Pomeroy*, 822 F.2d 718, 722 (8th Cir.1987); *United States v. Mills*, 641 F.2d 785, 787 (9th Cir.), cert. denied, 454 U.S. 902, 102 S.Ct. 409, 70 L.Ed.2d 221 (1981); *State v. Perkins*, 911 S.W.2d 548, 551 (Tex.App.—Fort Worth 1995, no pet.); *State v. Empak, Inc.*, 889 S.W.2d 618, 625 (Tex.App.—Houston [14th Dist] 1994, pet. ref'd); *State v. DeBlanc*, 858 S.W.2d 19, 22 (Tex.App.—Beaumont 1993, no pet.); *State v. Hernandez*, 830 S.W.2d 631, 635 (Tex.App.—San Antonio 1992, no pet.); *State v. Owens*, 778 S.W.2d 135, 138 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd).

Clarke cites *Emery v. State*, 881 S.W.2d 702 (Tex.Crim.App.1994), cert. denied, —— U.S. ——, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995) for the proposition that the court of criminal appeals has definitively held that a reviewing court applies the *Barker* balancing test de novo, and the majority agrees. However, I respectfully decline to follow a de novo review of a speedy trial claim. First, *Emery* misquotes *Barker v. Wingo* when it says that "[t]he *reviewing* court must consider four factors." 881 S.W.2d at 708 (emphasis added). The *Barker v. Wingo* opinion does not state that the *reviewing* court should apply the factors de novo. It simply states, "The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed." 407 U.S. 514, 530, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101, 117. Secondly, *Barker* mentions the "trial court's" need "to exercise judicial discretion based on the circumstances." *Id.* at 529–30, 92 S.Ct. at 2191, 33 L.Ed.2d at 117. The Supreme Court even states that this approach allows:

---

**13.** Act of May 3, 1989, 71st Leg., R.S., ch. 103, § 1, 1989 Tex. Gen. Laws 442, 442.

**14.** TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4 (Vernon Supp.1996).

a court to attach different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay.... It would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely *pro forma* objection.

*Id.* This statement obviously applies only to a trial court's ability to apply the tests.

The Supreme Court further refers to the need for "courts" to approach speedy trial cases on an ad hoc basis. "We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right." *Id.* at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. Again, the Supreme Court is clearly referring to the duty of trial courts in their application of the balancing test.

I believe that abuse of discretion is the appropriate standard of review for two reasons. First, the *Barker* test calls for case specific evidence, and the trial court is in a better position to judge the credibility of this evidence. *See Burgett v. State,* 865 S.W.2d 594, 598 (Tex.App.—Fort Worth 1993, pet. ref'd). Second, a more deferential standard is appropriate to review a trial court's application of legal rules to specific facts. *See In re Extradition of Howard,* 996 F.2d 1320,

1327–28 (1st Cir.1993).[1] The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles or, in other words, whether the act was arbitrary or unreasonable. *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex.Crim.App. 1990).[2] I believe that we should affirm judicial rulings if the trial court followed the appropriate analysis and balancing factors, although we might disagree with the weight given those individual factors. *Id.*

Recently, the Supreme Court has acknowledged that *it* must review a trial court's factual determinations in a speedy trial claim "with considerable deference." *Doggett v. United States,* 505 U.S. 647, 652, 112 S.Ct. 2686, 2691, 120 L.Ed.2d 520, 529 (1992). Further, federal courts of appeals do not conduct a de novo review of a trial court's determination on a speedy trial claim. *See United States v. Gomez,* 67 F.3d 1515, 1520 (10th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 737, 133 L.Ed.2d 687 (1996) (reviews for "plain error"); *United States v. Lucien,* 61 F.3d 366, 371 (5th Cir.1995) (reviews for clear error); *Burkett v. Fulcomer,* 951 F.2d 1431, 1438 (3rd Cir.1991), *cert. denied,* 505 U.S. 1229, 112 S.Ct. 3055, 120 L.Ed.2d 921 (1992) (reviews findings for clear error);[3] *United States v. Doggett,* 906 F.2d

---

1. *In re Extradition of Howard,* 996 F.2d 1320, 1327–28 (1st Cir.1993), discusses a degree-of-deference continuum along which appeals are arrayed:

 At the "no deference" end of the continuum lie appeals involving unadulterated questions of law, the resolution of which customarily entails *de novo* review. At the other end of the continuum lie appeals involving straight factual determinations, the resolution of which customarily entails acceptance of the trier's judgment in the absence of palpable error.... [T]he more fact-dominated the question, the more likely it is that the trier's resolution of it will be accepted unless shown to be clearly erroneous. *Id.* (citations omitted).

2. In *Montgomery v. State,* the Court of Criminal Appeals first clearly enunciated the test for abuse of discretion in criminal cases. 810 S.W.2d at 379–80. Appropriately, the court adopted the abuse of discretion standard to review another balancing test conducted by trial courts: whether to exclude relevant evidence under Rule 403 of the Texas Rules of Criminal Evidence. *Id.* at 379.

3. Speedy trial claims are a mixed question of fact and law. As *Burkett* shows, federal appellate courts sometimes review findings of fact for clear error and questions of law de novo. However, there is no rigid rule that mixed questions are to be reviewed in this way. A reviewing court may apply a more deferential standard "when it appears that the district court is 'better positioned' than the appellate court to decide the issue in question or that probing appellate scrutiny will not contribute to the clarity of legal doctrine." *Salve Regina College v. Russell,* 499 U.S. 225, 233, 111 S.Ct. 1217, 1222, 113 L.Ed.2d 190 (1991).

 Federal appellate courts have also sometimes used the term "clear error" to mean a deferential standard of review of mixed questions of law and fact. Because "clear error" is a federal term of art derived from Rule 52(a) of the Federal Rules of Civil Procedure, the preferential term for a deferential standard of review of mixed questions is "abuse of discretion." *Ornelas v. United States,* —— U.S. ——, —— n. 3, 116 S.Ct. 1657, 1661 n. 3, 134 L.Ed.2d 911 (1996).

 In Texas, we review such mixed questions for abuse of discretion. *See, e.g., Romero v. State,*

573, 582 (11th Cir.1990), *rev'd,* 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (reviews for clear error); *United States v. Sears Roebuck, Inc.,* 877 F.2d at 739 (Ninth Circuit reviews for abuse of discretion); *United States v. Pomeroy,* 822 F.2d at 722 (Eighth Circuit reviews for abuse of discretion). Thus, in my opinion, our review necessitates an examination of the *Barker* test as applied by the trial court. For these reasons, I concur.

800 S.W.2d 539, 543 (Tex.Crim.App.1990) (admissibility of an oral confession). An appellate court is not at liberty to disturb a trial court's findings of fact so long as evidence exists in the record to support the findings. *Id.; see also Holley v. Holley,* 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied). If there is evidence in the record to support the trial court's decision, we address only the question of whether the trial court followed the appropriate analysis of law. *Montgomery,* 810 S.W.2d at 380.