02-10-105-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00105-CR

 

 


 
 
 Adrian Nathan Salazar
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

----------

 

FROM THE 432nd
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          Appellant
Adrian Nathan Salazar appeals his conviction for failing to comply with a sex
offender registration requirement.[2]  In one point, he argues
that the trial court erred by denying his motion in arrest of judgment, in
which he contended that he had not received a speedy trial.  We affirm.

Background
Facts

          In
September 2007, a grand jury indicted appellant with failing to comply with a sex
offender registration requirement.  The indictment alleged that appellant had a
2001 conviction for indecency with a child, which required him to register as a
sex offender, and that he did not provide the Fort Worth Police Department with
timely notice that he was changing his address.  The indictment also contained
a repeat offender notice, which alleged that appellant had previously been
convicted of deadly conduct by discharging a firearm at a habitation.

          In
October 2008, appellant filed several pretrial motions relating to, among other
matters, discovery of the State’s evidence and potential witnesses.  After the
State filed some business records in April 2009, the parties appeared at a
status conference on November 4, 2009, and the trial court scheduled trial to
begin approximately two weeks later.  On November 13, 2009, however, appellant
pled guilty, and the State waived the repeat offender notice.[3]
 Appellant received written admonishments, expressly waived many constitutional
and statutory rights, and entered a judicial confession.

          The
trial court ordered the preparation of a presentence investigation report, and
appellant made several objections to the report.  After a sentencing hearing in
January 2010, at which appellant testified and elicited testimony from his
father-in-law, the trial court sentenced appellant to six years’ confinement.  The
trial court signed its judgment of conviction and a certification of
appellant’s right to appeal that, without limitation, gave him permission to appeal.[4]

          The
next month, appellant filed a motion in arrest of judgment[5]
to assert that his right to a speedy trial had been violated because “nearly
twenty-eight (28) months passed from the date [appellant] was arrested until
the trial court heard evidence and sentenced [appellant].”  Appellant asked the
trial court to dismiss his indictment with prejudice.  He conceded that he did
not assert his right to a speedy trial until after the trial court convicted
and sentenced him, but he relied on one of our previous opinions to contend
that his assertion of the right was still timely.[6] 
He also signed a declaration stating,

[M]y perceived failure, if any, to more promptly complain
of the denial of my right to a speedy trial was not the result of any design or
strategic decision on the part of my trial counsel, or the result of my making
a “knowing” decision to acquiesce in the prior delay between my arrest, return
of indictment, and my trial.  Rather, this failure, if any, was apparently an
inadvertent failure on the part of my trial counsel . . . .  If I had known of
my right to file a motion to dismiss based on speedy trial grounds, I would
have insisted that such a motion be prepared and filed by my attorney.  But for
[trial counsel’s] failure to inform me of said right, I further declare that I
would have never pled guilty . . . .

          Appellant
presented the motion in arrest of judgment to the trial court on the day he filed
it.  The trial court questioned whether it had jurisdiction to consider the
motion and said that it was “not going to be granting any relief” on it.  The
court did not expressly grant or deny the motion, so the motion was deemed
denied.[7]  Appellant filed notice
of this appeal.

Our
Jurisdiction

          In
its only response to appellant’s contention that the trial court erred by
denying his motion in arrest of judgment, the State contends that we lack
jurisdiction because appellant entered a plea bargain and cannot establish that
he is appealing matters raised and ruled on before trial or that he received
the trial court’s specific permission to appeal his speedy trial point.  See
Tex. R. App. P. 25.2(a)(2) (limiting appeals after a defendant enters a
plea bargain); Turley v. State, 242 S.W.3d 178, 180 (Tex. App.—Fort
Worth 2007, no pet.) (mem. op.) (dismissing an issue because the defendant did
not receive permission to appeal his complaint about the trial court’s alleged refusal
to hold a hearing on a motion for new trial).  The State asserts that because
“the record in this case does not show that Appellant had permission to appeal
any actions of the trial court which occurred post-trial, his claim should be
dismissed for lack of jurisdiction.”

          But
the State has not cited authority in which a court dismissed an issue or an
appeal arising from a plea-bargained case when the trial court gave unlimited,
global permission to appeal but did not give specific permission to appeal the
issue complained about.[8]  Instead, the State cites
authority in which the trial court did not grant any permission to appeal.  See,
e.g., Turley, 242 S.W.3d at 180; Estrada v. State, 149 S.W.3d
280, 282, 285 (Tex. App.—Houston [1st Dist.] 2004, pet. ref’d) (op. on reh’g). 
We have not found precedential authority addressing whether an appellant may
appeal matters that are raised for the first time in the trial court after the
court has given permission to appeal.  However, because the trial court’s certification
in this case unambiguously grants appellant permission to appeal, the trial
court verbally granted a right to appeal at the end of the sentencing hearing, and
the trial court became aware of appellant’s desire to appeal his speedy trial point
and did not thereafter amend the certification to state that he could not do so,
we hold that appellant has the right to appeal the point under rule
25.2(a)(2)(B).  We will proceed to address the merits of the point.[9]

Appellant’s
Right to a Speedy Trial

          Appellant
succinctly argues that the trial court erred by denying his motion in arrest of
judgment, which was based on his claim that he did not receive a speedy trial. 
As part of his point, appellant seems to contend that the trial court erred by
not granting an evidentiary hearing on the motion.  But when appellant’s
counsel presented the motion, he told the court, “[I]t’s up to you whether you
give us a hearing or not.”  The trial judge told him that he had an “absolute
right” to “place something on the record” and asked him whether there was “any
relief that [he was] specifically seeking.”  Appellant did not respond by
asking for an evidentiary hearing.  Later, the judge said, “You were allowed to
make a record.  Is there anything else that needs to be made?”  Appellant’s
counsel responded, “No, sir, not at this time.”  Further, we cannot conclude
that the trial court’s statement that it was not going to grant “relief” toward
the end of the presentment hearing signified that it was refusing to conduct an
evidentiary hearing on appellant’s motion.

          Thus,
we hold that the record does not support appellant’s contention that the trial
court refused to hold an evidentiary hearing, and we conclude that to the
extent that his point rests on the lack of an evidentiary hearing, he has
forfeited the point by not obtaining a ruling on whether he could have such a
hearing.  See Tex. R. App. P. 33.1(a)(2); Layton v. State,
280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009); Mendez v. State, 138
S.W.3d 334, 342 (Tex. Crim. App. 2004); Lee v. State, 186 S.W.3d 649,
658 (Tex. App.—Dallas 2006, pet. ref’d) (“To the extent appellant complains on
appeal of the trial court’s requirement that the evidence be submitted by
affidavit [in a motion for new trial hearing], we conclude the complaint was
not preserved for appellate review because appellant did not object to that
requirement.”); Adams v. State, 132 S.W.3d 701, 702 (Tex. App.—Amarillo
2004, no pet.) (mem. op.) (holding that the defendant forfeited his complaint
that the trial court denied a motion to suppress without holding a hearing when
the defendant did not complain in the trial court about the lack of a hearing);
Bouldin v. State, 100 S.W.3d 355, 355–56 (Tex. App.—San Antonio 2002, no
pet.) (holding that a defendant’s complaint that he should have been permitted
to present evidence during a motion for new trial hearing was forfeited because
the defendant did not object to the truncated nature of the hearing).  Also, if
there was particular evidence that appellant wanted to offer on the speedy
trial point, he could have submitted an offer of proof to show what the
evidence would have established.[10]  See Warner v. State,
969 S.W.2d 1, 2 (Tex. Crim. App. 1998).

          We
therefore deny appellant’s request that we “abate this appeal and remand said
case to the trial court with instructions to consider Appellant’s motion in
arrest of judgment.”  As explained above, the motion has already been denied.  See
Tex. R. App. P. 22.4(b).  Although appellant’s only specifically requested
relief is abatement and remand, and although appellant’s brief does not contain
significant analysis of his speedy trial claim, in the interest of justice, we will
determine the merits of that claim on the record that has been made available
to us.

          In
reviewing a trial court’s decision to deny an appellant’s speedy trial claim,
we generally apply a bifurcated standard of review, comprising an abuse of
discretion standard for the factual components and a de novo standard for the
legal components of the trial court’s decision.  State v. Munoz, 991
S.W.2d 818, 821 (Tex. Crim. App. 1999).  The Sixth Amendment to the United
States Constitution guarantees an accused’s right to a speedy trial.  U.S.
Const. amend VI; Zamorano v. State, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002);
Orand, 254 S.W.3d at 565.  In addition, the Texas constitution
guarantees the accused’s right to a speedy trial.  Tex. Const. art. I, § 10; Zamorano,
84 S.W.3d at 647.

          “On
its face, the [federal] Speedy Trial Clause is written with such breadth that,
taken literally, it would forbid the government to delay the trial of an
‘accused’ for any reason at all.”  Zamorano, 84 S.W.3d at 647 (quoting Doggett
v. United States, 505 U.S. 647, 651, 112 S. Ct. 2686, 2690 (1992)); Orand,
254 S.W.3d at 565.  Thus, in Barker v. Wingo, the Supreme Court
qualified the literal sweep of the provision by analyzing the constitutional
question in terms of four specific factors:  (1) whether the delay before trial
was uncommonly long; (2) whether the government or the defendant is more
to blame for the delay; (3) whether in due course, the defendant asserted
his right to a speedy trial; and (4) whether the defendant suffered prejudice
as the delay’s result.  407 U.S. 514, 530–32, 92 S. Ct. 2182, 2192–93 (1972).[11]

          Under
Barker, we must analyze federal constitutional speedy trial claims by
first weighing the strength of each of the above factors and then balancing
their relative weights in light of the conduct of both the prosecution and the
defendant.  Zamorano, 84 S.W.3d at 648; Munoz, 991 S.W.2d at 821;
Orand, 254 S.W.3d at 565.  None of the four factors is either a
necessary or sufficient condition to the finding of a deprivation of the right
to a speedy trial; instead, all factors must be considered together along with
any other relevant circumstances.  Zamorano, 84 S.W.3d at 648; Orand,
254 S.W.3d at 565.  No one factor possesses “talismanic qualities”; thus,
courts must “engage in a difficult and sensitive balancing process” in each
individual case.  Zamorano, 84 S.W.3d at 648 (quoting Barker, 407
U.S. at 533, 92 S. Ct. at 2193); Orand, 254 S.W.3d at 565–66.

          We
must apply the Barker balancing test with common sense and sensitivity
to ensure that charges are dismissed only when the evidence shows that a
defendant’s actual and asserted interest in a speedy trial has been infringed. 
Cantu v. State, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008).  “While the
State has the burden of justifying the length of delay, the defendant has the
burden of proving the assertion of the right and showing prejudice.”  Murphy,
280 S.W.3d at 450.  “[T]he greater the State’s bad faith or official negligence
and the longer its actions delay a trial, the less a defendant must show actual
prejudice or prove diligence in asserting his right to a speedy trial.”  Id.
at 450–51.

Length
of delay

          “The
Barker test is triggered by a delay that is unreasonable enough to be ‘presumptively
prejudicial.’  There is no set time element that triggers the analysis, but [the
court of criminal appeals has] held that a delay of four months is not
sufficient while a seventeen-month delay is.”  Cantu, 253 S.W.3d at 281;
see Murphy, 280 S.W.3d at 451; Orand, 254 S.W.3d at 566 (“The
length of delay between the initial charge and the trial acts as a triggering
mechanism, and unless the length of this delay is presumptively prejudicial,
courts need not inquire into or examine the other three speedy trial factors.”). 
The length of delay that can be tolerated for an ordinary, simple crime is
considerably less than for a more serious, complex charge.  Zamorano, 84
S.W.3d at 649.  “Presumptive prejudice does not necessarily indicate a
statistical probability of prejudice; it simply marks the point at which courts
deem the delay unreasonable enough to trigger the Barker inquiry.”  Murphy,
280 S.W.3d at 452.

          The
length of delay between appellant’s September 2007 indictment and his November
2009 guilty plea, a time span of more than two years, is presumptively
prejudicial.  See Cantu, 253 S.W.3d at 281; Murphy, 280
S.W.3d at 451.  Thus, the delay triggers our analysis of the remaining Barker
factors.  See Murphy, 280 S.W.3d at 452; Orand, 254 S.W.3d
at 566.

Reasons
for the delay

          The
record does not establish particular reasons for the delay between appellant’s
indictment and his plea.  In October 2007, a month after the grand jury
indicted appellant, he signed a document to express his choice to hire
counsel.  The State announced that it was ready for trial in January 2008. Appellant’s
retained counsel made an appearance in February 2008.[12]
 According to the clerk’s record filed in this appeal, the next official action
in the case occurred in October 2008, when appellant filed several pretrial
motions.  In April 2009, the State filed some business records, and in October
2009, appellant’s case was transferred to the trial court from another district
court.

          It
is impossible to determine why (apparently, as based on this record) nothing
happened in appellant’s case for long stretches of time in 2008 and 2009.[13] 
In Murphy, although no evidence was presented about the reason for
inactivity in a four-year period, we noted that the “primary burden of insuring
that cases are brought to trial rests on the courts and prosecution.”  280
S.W.3d at 453; see Emery v. State, 881 S.W.2d 702, 708 (Tex. Crim. App.
1994) (“The State has the initial burden of justifying a lengthy delay.”), cert.
denied, 513 U.S. 1192 (1995).  We therefore counted the four-year period as
a factor against the State, but we explained that “because there was no
evidence that the State was engaging in purposeful dilatory tactics, it [did]
not count heavily against the State.”  Murphy, 280 S.W.3d at 453; see
also Zamorano, 84 S.W.3d at 649 (stating that a “deliberate attempt to
delay the trial in order to hamper the defense should be weighted heavily
against the government,” while a “more neutral reason . . . should be weighted
less heavily but nevertheless should be considered since the ultimate
responsibility for such circumstances must rest with the government rather than
with the defendant”) (quoting Barker, 407 U.S. at 531, 92 S. Ct. 2192).

          The
State did not respond to appellant’s motion in arrest of judgment to show any
reason for the delay in bringing this case to trial.  Thus, like in Murphy,
we will count the unexplained delay as a factor in favor of appellant’s speedy
trial claim, but only slightly.  Murphy, 280 S.W.3d at 453; see
Dragoo v. State, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003).

Appellant’s
assertion of his speedy trial rights

          As
the court of criminal appeals explained in Cantu,

          The nature of the speedy-trial right makes “it
impossible to pinpoint a precise time in the process when the right must be
asserted or waived, but that fact does not argue for placing the burden of
protecting the right solely on defendants.”  The defendant has no duty to bring
himself to trial; that is the State’s duty.  But a defendant does have the
responsibility to assert his right to a speedy trial.  Whether and how a
defendant asserts this right is closely related to the other three factors
because the strength of his efforts will be shaped by them.  “The more serious
the deprivation, the more likely a defendant is to complain.”  Therefore, the
defendant’s assertion of his speedy-trial right (or his failure to assert it)
is entitled to strong evidentiary weight in determining whether the defendant
is being deprived of the right.  Filing for a dismissal instead of a speedy
trial will generally weaken a speedy-trial claim because it shows a desire to
have no trial instead of a speedy one.  If a defendant fails to first seek a
speedy trial before seeking dismissal of the charges, he should provide cogent
reasons for this failure.  Repeated requests for a speedy trial weigh heavily
in favor of the defendant, while the failure to make such requests supports an
inference that the defendant does not really want a trial, he wants only a
dismissal.

253
S.W.3d at 282–83 (citations and footnotes omitted).

          Here,
appellant did not really make any request for a speedy trial.  Rather, by the
time appellant invoked his right to a speedy trial, appellant’s plea, conviction,
and sentencing (to six years’ confinement, which is on the higher end of the
third-degree felony range) had already occurred.[14] 
Appellant has not provided cogent reasons for his failure to seek a speedy
trial before entering his guilty plea, nor has he established that he really
wanted one instead of a dismissal.  His declaration in the trial court stated,
“If I had known of my right to file a motion to dismiss based on speedy
trial grounds, I would have insisted that such a motion be prepared and filed
by my attorney.”  [Emphasis added.]

          In
Murphy, Murphy did not assert her right to a speedy trial until a motion
to dismiss that was filed ninety-two months after her arrest.  280 S.W.3d at 454. 
Murphy then filed another motion to dismiss less than a year after filing the
first one.  Id.  She also testified that she asked her attorney several
times why her trial had not started.  Id.  Because Murphy “did not
assert her right to a speedy trial for a lengthy period of time, and then once
she did assert the right it was in the form of a motion to dismiss the charges
against her, we conclude[d] that this factor weigh[ed] against Murphy and
against her claim that she was denied her right to a speedy trial.”  Id.

          Appellant
did much less, and waited until a later point in the proceedings (after his
guilty plea and sentencing hearing), to assert his right to a speedy trial than
Murphy did.  We hold that this factor weighs heavily against appellant.  See Dragoo,
96 S.W.3d at 314–15 (deciding that a defendant’s quiet acquiescence to a longer
than three-year delay weighed heavily in favor of the State); Emery, 881
S.W.2d at 709 (“Appellant’s sparse and delinquent assertions of his right to a
speedy trial weigh in favor of the State’s position.”); Schenekl v. State,
996 S.W.2d 305, 313 (Tex. App.—Fort Worth 1999), aff’d, 30 S.W.3d 412
(Tex. Crim. App. 2000); Parkerson v. State, 942 S.W.2d 789, 791 (Tex.
App.—Fort Worth 1997, no pet.) (“Appellant’s request for a dismissal instead of
a speedy trial weakens his claim because it shows a desire to have no trial
instead of a speedy trial.  Therefore, the third Barker factor weighed
against Appellant.”) (citations omitted); cf. Zamorano, 84 S.W.3d at
647, 651 (holding that a late assertion of the right to a speedy trial did not
weigh against the defendant because the defendant filed a second attempt to
seek a speedy trial after the trial court denied his initial motion, and both
assertions of the right occurred before the defendant’s no contest plea); Orand,
254 S.W.3d at 568–69 (concluding that although the defendant waited until after
his conviction from a contested trial to assert his right to a speedy trial,
that fact did not weigh against him because the crux of his speedy trial
complaint was not the delay between his arrest and his trial but a nearly
twelve-year delay between when he was indicted and when he learned of the
charge and turned himself in to authorities).

Prejudice

          The
rights to a speedy trial protect three interests of the defendant:  freedom
from oppressive pretrial incarceration, mitigation of the anxiety and concern
accompanying public accusation, and avoidance of impairment to the accused’s
defense.  Cantu, 253 S.W.3d at 285; see Clarke v. State, 928
S.W.2d 709, 715 (Tex. App.—Fort Worth 1996, pet. ref’d) (op. on reh’g).  “It is
the defendant’s burden to make a prima facie showing of prejudice.  Once the
defendant does so, it is the State’s ‘obligation of proving that the accused
suffered no serious prejudice beyond that which ensued from the ordinary and
inevitable delay.’”  Clarke, 928 S.W.2d at 716 (quoting Ex parte
McKenzie, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973)).

          In
his motion in arrest of judgment, appellant asserted that he had suffered
“oppressive bond conditions . . . for over two (2) years,” oppressive
incarceration “at the present time” (after he had already been convicted and
sentenced), and “substantial anxiety and concern.”  Appellant did not provide any
particular facts to support his otherwise conclusory claims about the bond
conditions or his anxiety; his failure to do so weighs against his claim of
prejudice.  See State v. Smith, 76 S.W.3d 541, 552 (Tex. App.—Houston
[14th Dist.] 2002, pet. ref’d) (holding that bare, conclusory assertions are
insufficient to show significant prejudice); see also Shaw v. State, 117
S.W.3d 883, 890 (Tex. Crim. App. 2003) (“[A]ppellant offered no evidence to the
trial court that the delay had caused him any unusual anxiety or concern, i.e.,
any anxiety or concern beyond the level normally associated with being charged
with [a] crime.”); Murphy, 280 S.W.3d at 455 (minimizing the impact of generalized
expressions of anxiety and concern that amount to little more than a nominal
showing of prejudice).  And appellant’s claim about oppressive bond conditions
for over two years indicates that he was not confined during that time and
shows that one of the three interests served by speedy trial rights—freedom
from oppressive pretrial incarceration—weighs in favor of the State.[15]

          Of
the forms of prejudice, the most serious is impairment to the accused’s
defense.  Dragoo, 96 S.W.3d at 315.  Appellant has not alleged that his
defense was prejudiced.  It would be difficult for him to do so because he
judicially confessed to committing “each and every act” alleged in the
indictment, which simply stated that he had failed to properly notify the Fort
Worth Police Department before he changed addresses.  During the sentencing
hearing, appellant again admitted his guilt; he testified that he knew the
rules of reporting as a sex offender and that he lived part-time with his
girlfriend in Mesquite without notifying authorities as required.  And we
cannot find any indication from the record that the delay between appellant’s
indictment and plea could have increased his sentence.

Balancing
the factors

          In
weighing all four of the Barker factors, we conclude that appellant’s
failure to timely assert his speedy trial rights pervades and predominates the limited
prejudice he has alleged.  See Santallan v. State, 922 S.W.2d 306, 309
(Tex. App.—Fort Worth 1996, pet. ref’d); see also Harris, 827 S.W.2d at
957 (holding that, among other facts, a defendant’s failure to invoke his
constitutional speedy trial right until trial and the lack of evidence of any
particularized prejudice to him showed that the “balance [was] clearly in favor
of the State”).  The delay between appellant’s indictment and guilty plea was
presumptively prejudicial, and the lack of a reason for the delay weighs slightly
in favor of appellant.  But the other two factors weigh much heavier against
him.  Appellant never truly expressed his desire for a speedy trial.  Instead,
he requested dismissal and acquittal after he was convicted and was apparently
dissatisfied with the sentence he received.  The record seems to preclude the
possibility that appellant’s defense was prejudiced by the delay.  Also, he did
not assert oppressive pretrial confinement and did not provide facts supporting
his claim of anxiety.

          After
balancing the Barker factors, we hold that there is no error in the
deemed denial of appellant’s motion in arrest of judgment on the basis that he
did not receive a speedy trial.  We overrule his sole point.

Conclusion

          Having
overruled appellant’s only point, we affirm the trial court’s judgment.

 

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; GARDNER and WALKER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  March 31, 2011









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Code Crim.
Proc. Ann. art. 62.102(a) (Vernon 2006).





[3]On appeal, appellant
refers to his guilty plea as a “negotiated open plea.”  Appellant’s plea
paperwork states that he pled guilty to a third-degree felony.  Generally, “if
it is shown on the trial of a . . . third-degree felony that the defendant has
been once before convicted of a felony, on conviction he shall be punished for
a second-degree felony.”  Tex. Penal Code Ann. § 12.42(a)(3) (Vernon Supp.
2010).  The State’s agreement to waive the repeat offender notice in conjunction
with appellant’s guilty plea capped the amount of confinement that appellant
could have received at ten years (the third-degree felony maximum) instead of
twenty years (the second-degree felony maximum).  See id. §§ 12.33–.34
(Vernon Supp. 2010), .42(a)(3).  Thus, the guilty plea qualifies as a plea
bargain under Texas Rule of Appellate Procedure 25.2.  See Tex. R. App.
P. 25.2(a)(2); Shankle v. State, 119 S.W.3d 808, 813 (Tex. Crim. App.
2003); Carender v. State, 155 S.W.3d 929, 931 (Tex. App.—Dallas 2005, no
pet.).





[4]The certification states
that the case was “a plea-bargain case, but the trial court has given
permission to appeal, and the defendant has the right of appeal.”  See
Tex. R. App. P. 25.2(a)(2)(B).





[5]See Tex. R. App. P.
22.1.





[6]See Orand v. State,
254 S.W.3d 560, 568, 572 (Tex. App.—Fort Worth 2008, pet. ref’d) (holding that
a defendant’s speedy trial rights were violated although he asserted them after
his conviction).





[7]See Tex. R. App. P.
22.4(b).





[8]We note that rule
25.2(a)(2)(B) uses general terms; it does not state that a defendant may appeal
only after getting the trial court’s permission to appeal the specific issues
that the defendant plans to raise in the appeal.  See Tex. R. App. P.
25.2(a)(2)(B).





[9]The State also contends
that appellant waived his right to appeal as part of his plea bargain.  But
“the trial court’s subsequent handwritten permission to appeal controls over a
defendant’s previous waiver of the right to appeal, allowing the defendant to
appeal despite the boilerplate waiver.”  Willis v. State, 121 S.W.3d
400, 403 (Tex. Crim. App. 2003); see Perez v. State, 129 S.W.3d 282, 288
(Tex. App.—Corpus Christi 2004, no pet.).





[10]We also note that
appellant’s brief does not disclose any evidence he wishes to present that
would impact his speedy trial claim but that is not in the record.





[11]Although the “Texas
constitutional speedy trial right exists independently of the federal
guarantee,” courts analyze the federal and state rights using the same
balancing considerations.  Zamorano, 84 S.W.3d at 648; see Harris v.
State, 827 S.W.2d 949, 956 (Tex. Crim. App.), cert. denied, 506 U.S.
942 (1992); Murphy v. State, 280 S.W.3d 445, 450 (Tex. App.—Fort Worth
2009, pet. ref’d).





[12]Thus, the record
indicates that appellant possibly searched for counsel to retain between
October 2007 and February 2008.





[13]In appellant’s motion in
arrest of judgment, he stated that he rejected plea offers “from February 22,
2008, to August 11, 2008.”  To the extent that the six-month delay from
February 2008 to August 2008 was caused by plea negotiations, such negotiations
are a “valid reason for the delay and should not be weighed against the
prosecution.”  Munoz, 991 S.W.2d at 824.  Appellant’s motion also stated
that the trial court had five settings for trial in 2008 and 2009; it did not
explain why the trial did not commence on those dates.





[14]Appellant declared in the
trial court that his delay in asserting his speedy trial right was not the
result of a strategic decision.  In general, we would be reluctant to issue an
opinion that would encourage a defendant who plans on pleading guilty without a
punishment recommendation by the State, rather than on taking a case to trial,
to gamble by waiting until the trial court makes its sentencing decision and
then, if the decision is not favorable to the defendant, seeking acquittal on
the basis that a trial did not occur quickly enough.





[15]The trial court’s
judgment shows that appellant received credit for being incarcerated for two
days in September 2007 and one day in January 2010.  Because he received credit
for three days of confinement after ultimately being convicted, that
confinement was not oppressive.  See Starks v. State, 266 S.W.3d 605,
612 (Tex. App.—El Paso 2008, no pet.) (holding that a defendant’s twenty-five-month
pretrial incarceration was not oppressive when the defendant received credit on
his sentence for time served and ultimately pleaded guilty).